**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| STANTON SQUARE, LLC | * | CIVIL ACTION |
| Plaintiff | * | No. 2:23-cv-05733 |
| | * | |
| VERSUS | * | SECTION "D" |
| | * | JUDGE WENDY VITTER |
| THE CITY OF NEW ORLEANS, | * | |
| THE NEW ORLEANS CITY COUNCIL, and | * | |
| FREEDIE KING, III, | * | MAGISTRATE "5" |
| in his official capacity as a member of the | * | JUDGE MICHAEL NORTH |
| New Orleans   City Council | * | |
| Defendants | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

The central issue in this case is whether the Defendants properly exercised municipal zoning power to regulate land use in the Lower Coast of Algiers in S-RM1 Multi-Family Zoning Districts. Included in the Lower Coast of Algiers S-RM1 Multi-Family Zoning Districts is a large area of undeveloped forested land owned by Plaintiff. The zoning action complained of by Plaintiff implemented an Interim Zoning District ("IZD") which caused a temporary delay of construction of all multi-family developments while a study of the impact of development upon Plaintiff's property and all other similarly situated property was conducted.

Plaintiff was affected by this creation of an IZD because she desires to replace her undeveloped property with 278 multi-family rental units and several amenities; but she must now wait while a study is conducted. Plaintiff believes that discrimination was behind the Defendants' motivation to implement the IZD, rather than a desire to improve public welfare and a need to

evaluate the effects on infrastructure and environment. Plaintiff is mistaken.

As is shown below, the facts alleged by Plaintiff in her Complaint for Injunctive, Declaratory, and Monetary Relief (the "Complaint")[1] do not support any of her claims. The Complaint fails to satisfy the pleading standard under Fed. Rule Civ. Proc. 12(b)(6) in several respects and should therefore be dismissed.

With respect to its FHA claim, Plaintiff fails to articulate a disparate racial impact. Plaintiff fails to show, by statistics or otherwise, that its proposed market-rate rental development would increase diversity. Plaintiff's description of its development as being an "affordable housing development" is merely conclusory given that Plaintiff fails to articulate the price for its units. In addition, Plaintiff conflates and interchanges statistics applicable to different geographic areas, including Lower Algiers, English Turn, and Plaquemines Parish, further rendering its statistical analysis unhelpful. As such, Plaintiff's "statistical evidence" fails to show a causal connection necessary to support a claim of disparate impact.

Further, Plaintiff's allegations of discriminatory intent are conclusory and speculative, and cannot support a claim for violation of the FHA. The facts show that the zoning decisions made by the Defendants to temporarily delay development in the Lower Coast of Algiers were made for the purpose "to allow for appropriate impact studies regarding drainage, road and utility infrastructure, municipal services for fire, police, emergency response services, and other public safety considerations, and an environmental impact analysis." Plaintiff's allegations of

---

[1]   Doc. 1.

discrimination and unfair procedure are speculative, conclusory, and not supported by facts. Finally, Plaintiff fails to show how the temporary pause implemented by the zoning decisions harmed or will harm Plaintiff or any minority.

These claims, as well as the remaining federal and state law claims contain insufficient factual support to create a plausible cause of action. Therefore, the Complaint should be dismissed in its entirety.

## I.   FACTS AND PROCEDURAL BACKGROUND

In March 2021, Plaintiff, a real estate developer, purchased an undeveloped tract of forested land in Lower Coast Algiers; Plaintiff proposed to the Defendants that she would develop on the property a multi-family residential complex with 278 units, a swimming pool, clubhouse, playground, gym, pickle ball courts, a dog park, a dog spa, walking trails and storage units (the "Proposed Development").[2] Plaintiff's Proposed Development exceeded 40,000 square feet in floor area, and therefore required review and approval by the Design Advisory Committee ("DAC") of the City Planning Commission ("CPC").[3] After Plaintiff submitted its initial design review application on May 18, 2022, there arose vocal neighborhood opposition from residents in the zoning district who raised concerns regarding infrastructure, drainage, and the environment.[4] Following an August 28, 2022, meeting by the DAC to consider the Plaintiff's design proposal during which 80 residents voiced objections,  the DAC voted to defer its decision and to allow Plaintiff to resubmit its application to include a "full set of building elevations to determine

---

[2]   Doc. 1, ¶¶ 19, 24, 27, 28, 39.
[3]   Doc. 1, ¶ 41.
[4]   Doc. 1, ¶¶ 43-46.

massing, roof forms and exterior details" and "3-D renderings to convey the entirety of the site and address comments regarding site connectivity, circulation, landscape buffers and site context with adjacent neighborhoods."[5]

On October 6, 2022, the City Council considered a motion that affected zoning for all properties in the S-RM1 Zoning District in Orleans Parish, which included but was not limited to the Proposed Development.[6] That motion, Motion No. M-22-447 (the "IZD Motion"), directed the CPC to conduct a study and report to amend CZO Art. 19 to establish a new interim zoning district to be named the Lower Algiers Rural Protection Interim Zoning District ("IZD").[7] The intent of the IZD Motion was to temporarily prohibit new development of multi-family residential homes in the S-RM1 Zoning District and commercial development in S-B2 Business District in order to "allow for appropriate impact studies regarding drainage, road and utility infrastructure, municipal services for fire, police, emergency response services, and other public safety considerations, and an environmental impact analysis."[8] The IZD Motion was passed.[9]

On November 15, 2022, Plaintiff appealed the IZD Motion to the Executive Director of the CPC (the "IZD Appeal").[10] At the time of filing the IZD Appeal, Plaintiff had not (and to date, has not) sought or obtained necessary permits for its proposed development.[11] On December 13, 2022, the CPC held a public hearing regarding the IZD Appeal.[12] Following the hearing which included

---

[5]   Doc. 1. ¶48-48.
[6]   Doc. 1, ¶ 51.
[7]   *Id.*
[8]   Doc. 1, ¶ 53.
[9]   Doc. 1, ¶ 56.
[10]  Doc. 1, ¶¶ 58, 59.
[11]  Doc. 1, ¶ 113.
[12]  Doc. 1, ¶¶ 62-63.

public comments, the CPC recommended to the City Council that Plaintiff's IZD Appeal be granted.[13]

On February 2, 2023, the New Orleans City Council held a public meeting to consider the two zoning ordinances which are the subject of this lawsuit.  First, Motion No. M-23-57 (as amended, as corrected), by unanimous vote (6-0), allowed the establishment of a temporary Interim Zoning District, entitled "Lower Algiers Rural Protection Interim Zoning District" (the "IZD Motion"), which called for, among other things, impact studies on drainage, road and utility infrastructure, municipal services for fire, police, emergency response services, and the environment.[14]  Second, Motion No. M-23-62 (as amended), by unanimous vote (6-0), denied Plaintiff's request for a waiver of the requirements of the IZD.[15] At the hearing, residents of Lower Coast Algiers expressed concerns regarding stormwater flooding, strains on municipal services such as police, ambulance and water, increased traffic, potential damage to wildlife, and removal of trees and fauna.[16] Plaintiff and certain other nonresidents who did not live in the Lower Coast of Algiers zoning district argued that the motions would be discriminatory.[17] Both of these motions were passed.[18]

On March 6, 2023, Plaintiff filed an action in the Civil District Court of Orleans Parish to appeal the City Council's zoning decisions made on February 2, 2023. This case is styled, *Stanton*

---

[13]   Doc. 1, ¶ 66.
[14]   Doc. 1, ¶¶ 51, 53, 84.
[15]   Doc. 1, ¶ 76.
[16]   Doc. 1, ¶73.
[17]   Doc. 1, ¶74.
[18]   Doc. 1, ¶ 76.

*Square, LLC v. The City of New Orleans and the New Orleans City Council*, CDC No. 2023-01894. In that case, Plaintiff sought much of the same relief as in the instant case. Among other things, in the state court case, Plaintiff asked the court to reverse the zoning decisions in Motions M-23-57 and M-23-62 and asked the court to issue a judgment that the Defendants acted arbitrarily, capriciously, unreasonably, and discriminatorily in violation of the Louisiana Constitution, the Louisiana Revised Statutes, the Home Rule Charter, and the City Ordinances. On November 17, 2023, a contested hearing was held on Plaintiff's Motion to voluntarily dismiss the state court. At the conclusion of the hearing, the Court granted the Plaintiff's Motion to dismiss and dismissed the action without prejudice.

On October 3, 2023, Complainant filed the Complaint in the instant lawsuit, just one week prior to the hearing on the judicial review on October 13, 2023. In the Complaint, Plaintiff asserts six causes of action, which include claims alleging violations of the Fair Housing Act,[19] violations of the Civil Rights Act of 1964,[20] Violation of the Louisiana Equal Housing Opportunity Act,[21] Violation of Due Process Under 42 U.S.C. § 1983 and the Louisiana Constitution,[22] and seeks injunctive relief, monetary compensation and an issuance of a writ of mandamus seeking to reverse the zoning decisions at issue in this case which stem from the state court case.[23]

---

[19]   Doc. 1, ¶¶ 123-138.
[20]   Doc. 1, ¶¶ 139-145.
[21]   Doc. 1, ¶¶146-153.
[22]   Doc. 1, ¶¶154-163.
[23]   Doc. ¶¶ 164-170.

## II.   <u>LAW AND ARGUMENT</u>

### A.   <u>The Plaintiff Fails to State a Claim upon Which Relief Can be Granted under Rule 12(b)(6).</u>

Plaintiff's claims must be dismissed because the Complaint fails to satisfy the pleading standard under Federal Rule of Civil Procedure 12(b)(6).[24] In deciding a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[25] "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[26] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27] "It follows, that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'"[28]

*Iqbal* established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court identifies and disregards conclusory allegations for they are "not entitled to the assumption of truth."[29] Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief."[30] "This standard 'calls for enough facts to raise a reasonable expectation that discovery will reveal

---

[24]   *Ashcroft v. Iqbal*, 556 U.S. 662, 129 Sc.D.. 1937, 1949, 173 L.Ed.2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 sect. 1955, 167 L.Ed.2d 929 (2007).

[25]   *Gonzalez v. Kay*, No. 08-20544, 2009 WL 2357015, p. 2 (5th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555.

[26]   *Id.* (quoting *Iqbal*, 556 U.S. 662, 129 sects. at 1949, 173 L.Ed.2d 868.

[27]   *Id.*

[28]   *Id.*

[29]   *Iqbal*, 129 S.Ct. at 1951.

[30]   *Id.*

evidence of" the necessary claims or elements."[31] This means that, while a complaint need not include "detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[32]

The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth.[33] The court should not "'strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions."[34] Legal conclusions must be supported by factual allegations.

As is more fully discussed below, none of Plaintiff's causes of action asserted in the Complaint are supported by well-pleaded facts.

**B.** **Plaintiff's First Cause of Action - Fair Housing Act, 42 U.S.C. § 3604 – fails to demonstrate disparate racial impact, discriminatory intent, or any harm caused to any person.**

The Fair Housing Act (the "FHA"),[35] prohibits housing discrimination, including the refusal to sell or rent housing based on race, color, religion, sex, familial status or national origin, and any policy or conduct that "otherwise make[s] unavailable or den[ies], a dwelling [based on these impermissible factors]."[36] The FHA makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status,

---

[31]  *Morgan v. Hubert*, No. 08-30388, 2009 WL 1884605 *3 (5th Cir. July 1, 2009).
[32]  *Id.*
[33]  *Iqbal*, 129 S.Ct. at 1950 (citation omitted).
[34]  *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir.2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir.2004)).
[35]  42 U.S.C. §§ 3601-3619.
[36]  42 U.S.C. § 3604(a).

or national origin." Zoning laws that unfairly exclude minorities may violate the FHA.[37]

### 1. Plaintiff failed to show any disparate racial impact.

"Central to determining both discriminatory intent and discriminatory effect is an assessment of whether or not the challenged law has a disparate racial impact."[38] The Supreme Court case of *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.* is instructive as to the necessary criteria for a claim of disparate racial impact under the FHA. *Inclusive Communities* involved an FHA claim that a state agency responsible for distributing federal low-income housing tax credits had done so in a manner that "caused continued segregated housing patterns by its disproportionate allocation of the tax credits."[39] The Court held that disparate-impact claims were cognizable under the FHA but cautioned that disparate impact would support an FHA claim only where a "robust causality requirement" is satisfied.[40] The Court cautioned that courts must "examine with care whether a plaintiff has made out a prima facie case of disparate impact. . . . [and] [a] plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact."[41] The Court further noted that "[g]overnmental . . . policies are not contrary to the disparate-impact requirement unless they are 'artificial, arbitrary, and unnecessary barriers.'"[42]

---

[37] *See Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 539-41, 135 S.Ct. 2507, 192 L.Ed.2d 514 (2015) (discussing application of FHA to zoning cases).

[38] *Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Parish*, 648 F.Supp.2d 563, 566-67 (E.D. La. 2009).

[39] *Id*. at 526 (alleging that there were "too many credits for housing in predominantly black inner-city areas and too few in predominantly white suburban neighborhoods").

[40] *Id*. at 5432523 (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 653, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989).

[41] 576 U.S. 519.

[42] *Id*. at 545.

In order to prove disparate impact, a governmental policy, procedure, or practice must be shown to have a "significantly greater discriminatory impact on members of a protected class."[43]

Plaintiff attempts to demonstrate disparate impact by reference to various statistics. However, Plaintiff's statistical analysis is flawed in many ways and fails to support its disparate impact theory. Plaintiff begins by alleging that the area covered by the IZD Motion, Lower Coast of Algiers, is "mostly White."[44] This vague statement is an insufficient starting point upon which to begin a statistical analysis. Plaintiff describes the racial makeup of the English Turn Neighborhood and Plaquemines Parish, but that information is not relevant and is misleading. Any analysis of an alleged disparate racial impact of a zoning decision affecting the Lower Coast of Algiers must begin with a showing of the racial make-up of the entire Lower Coast of Algiers, not a sub-part of that area or a nearby area.

Second, for Plaintiff to plausibly allege that its Proposed Development would have increased racial diversity in the Lower Coast of Algiers area Plaintiff must (1) show a pool of potential renters who would benefit from the reversal of the IZD Motion and (2) show that this pool of potential renters is racially different from the pool of renters governed by the zoning regime governed by the IZD Motion.[45] For example, in *Avenue 6E Investments*, a developer appealed the denial of request to change zoning to allow for a decrease in lot size. The developer successfully

---

[43]   *Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1555 (5th Cir. 1996); see also *Texas Dept. of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc*., 135 S. Ct. 2507, 2518 (2015) (holding that disparate-impact claims are cognizable under the FHA).

[44]   Doc. 1, ¶ 34.

[45]   *See Avenue 6E v. City of Yuma*, 217 F.Supp.3d 1040, 1050 (2017) (disparate impact shown due to denial of zoning request to reduce lot sizes).

showed a prima facie case of disparate impact by providing statistical evidence "based on a pool of qualified home purchasers within the relevant market area and during the relevant time frame— regarding the racial makeup of those priced out of the market as a result of the price increase associated with the City's denial of Plaintiffs' rezoning application."[46]

Here, Plaintiff does not (or cannot) provide the price point for its rental units other than declaring in conclusory manner that its Proposed Development is "affordable."[47] Plaintiff makes no attempt to compare actual prices of its Proposed Development rental units with market prices. In addition, Plaintiff offers only a conclusory speculation that that its Proposed Development would "be disproportionately occupied by African Americans and Hispanics" as compared to any other location."[48] Further, as noted earlier, Plaintiff's analysis is flawed by its attempt to use the neighborhood of English Turn and Plaquemines Parish as racial benchmarks.[49] The IZD Motion applies to all of the Lower Coast Algiers.  Therefore, any legitimate statistical analysis of the racial impact of the IZD Motion must specify the racial makeup of all of Lower Coast Algiers. Plaintiff does do this. As a result, Plaintiff's attempt to show disparate racial impact by use of statistics fails to demonstrate the "robust causality requirement" required by *Inclusive Communities*. The Section 3604 FHA claim should therefore be dismissed.

2. <u>**Plaintiff cannot show any discriminatory intent by the Defendants.**</u>

To prove disparate treatment under both the FHA and ADA, the plaintiff must show that

---

[46]   *Id.*
[47]   Doc. 1, ¶ 1.
[48]   Doc. 1, ¶ 3.
[49]   *Id.*

the defendant intended to discriminate or was improperly motivated in making the discriminatory decision.[50] To assess whether or not discriminatory intent exists in a zoning decision, the Fifth Circuit, faithful to the U.S. Supreme Court case of *Village of Arlington Heights v. Metropolitan Housing Development Corp.*,[51] has held the following circumstantial factors to be both pertinent and non-exhaustive:

1. historical background of the decision;
2. the specific sequence of events leading up to the decision;
3. departures from the normal procedural sequence;
4. substantive departures; and
5. legislative history, especially where there are contemporary statements by members of the decision-making body.[52]

Plaintiff's Complaint alleges that the City Council reached a "gentleman's agreement," as Plaintiff describes it, between themselves and residents of English Turn. This agreement was that the zoning appeal process would preordained to result in an adverse decision to Plaintiff.[53] Plaintiff alleges, "upon information and belief," that there was a "gentlemen's agreement" among members of the City Council to arbitrarily bypass zoning procedures. Plaintiff alleges, without factual support, that IZD Motion's stated, legitimate, purpose was "plainly pretextual."[54] However, facts do not support Plaintiff's claim that the Defendants were motivated by discrimination. On the contrary, the facts show that the Defendants were motivated by concerns over public welfare regarding the effects on infrastructure, public services, and the environment by developing a

---

[50]   See, e.g., *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1386 (5th Cir.1986); *Greater New Orleans Fair Hous. Action Ctr.*, 648 F.Supp.2d at 808.
[51]   429 U.S. 252 (1977).
[52]   *Overton v. City of Austin*, 871 F.2d 529, 540 (5th Cir.1989).
[53]   Doc. 1, ¶ 79.
[54]   Doc. 1, ¶ 84.

previously forested tract of land.[55] The background and procedural details of Plaintiff's zoning appeal and the IZD Motion reveal merely that there were citizens who expressed their concerns at various public meetings regarding these matters. The facts show that the Defendants provided all affected parties a fair opportunity to be heard and chose a conservative approach with respect to moving forward for potential development in this area.[56] In addition, Plaintiff's contention that Defendants were somehow at fault by listening to the concerns of citizens and residents who felt impacted by the IZD motion is not supported by law or fact.[57]

### 3.  Plaintiff cannot demonstrate any person harmed by the zoning decisions in this case.

The Complaint does not contain "enough facts" as to the identity of any aggrieved persons allegedly harmed by the City Defendant's zoning decisions to satisfy the pleading requirements. Plaintiff must allege an injury traceable to defendants' conduct that would entitle the injured person to recover.[58] As noted above, Plaintiff cannot show any "disproportionate harm" on any minority due to the IZD Motion. Further, Plaintiff cannot show any harm to itself since it had not filed for or received any building permits at the time of the IZD Motion.  In addition, Plaintiff cannot seriously argue that the temporary delay caused by the IZD Motion caused it any damages.

Plaintiff must allege an injury traceable to the Defendants' conduct that would entitle it to

---

[55]  Doc. 1, ¶¶ 40, 47, 53, 71, 72, 73, 84, 86, 87, 88.

[56]  Doc. 1, ¶¶ 39, 42, 47, 61, 62, 70, 73, 74, 81.

[57]  The Louisiana Supreme Court has long recognized that expressions of neighbors' opinion to the Council constitute the means a legislative body learns the will of the people and determines what benefits the public good." *Four States Realty Co., Inc*., 309 So. 2d at 666 (1974). The Court recognized further that because legislative decisions concern a manifestation of the will of the people, every presumption of law and fact must be considered in favor of its constitutionality. *Id.*

[58]  *See Danenhower v. Dorsey*, CIV. A. 97-390, 1997 WL 469960 (E.D. La. Aug. 12, 1997); *Ores v. Willow W. Condo. Ass'n*, 94 C 4717, 1996 WL 111894 (N.D. Ill. Mar. 12, 1996).

recover.[59] Here, the Complaint does not state what types of injury occurred or the types of damages allegedly suffered or the allegedly aggrieved parties who incurred such damages as a result of Defendants' conduct.  Rather, Plaintiff alleges in a conclusory manner that it "has been injured by Defendants' discriminatory conduct and suffered damages as a result."[60] In *Danenhower v. Dorsey*, then District Judge Edith Clement found this type of conclusory allegation insufficient to permit plaintiff to bring an action for violation of the FHA.[61]

C. **Plaintiff's Second Cause of Action - Fair Housing Act, 42 U.S.C. § 3617 – fails because there is no violation of the Section 3604 of the FHA and, further, because there are no facts to show any interference or retaliation.**

Section 3617 of the FHA makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section . . . 3604" of the FHA.[62] The conduct that Plaintiff alleges violated Section 3617 of the FHA is the same conduct that Plaintiff alleges violates Section 3604 in its First Cause of Action.[63] Where a plaintiff alleges that the same conduct underlies claims of violations of Section 3604 and Section 3617, the validity of the Section 3617 claim depends on the whether the defendant's conduct also violated 3604.[64] As is shown above, Plaintiff failed to

---

[59]  *See Danenhower v. Dorsey*, CIV. A. 97-390, 1997 WL 469960 (E.D. La. Aug. 12, 1997); *Ores v. Willow W. Condo. Ass'n*, 94 C 4717, 1996 WL 111894 (N.D. Ill. Mar. 12, 1996).

[60]  Doc. 1, ¶ 129.

[61]  *Id.*

[62]  42 U.S.C. 3617.

[63]  Doc. 1, ¶¶ 123-131, 132-138.

[64]  *See Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 558 F.2d 1283, (7th Cir. 1977) certiorari denied 98 S.Ct. 752, 434 U.S. 1025, 54 L.Ed.2d 772, on remand 469 F.Supp. 836 (Section 3617 claim based on zoning decision depended on whether there was an underlying violation of the FHA under Section 1304).

allege sufficient facts to support a violation of the FHA under Section 3604. It follows that Plaintiff similarly fails to allege sufficient facts to support a violation under 3617. In addition, Plaintiff fails to allege any facts to support its claim of "interference" or "retaliation" by Defendants.[65] Plaintiff's conclusory claims do not suffice to adequately allege a violation of Section 3617 of the FHA.

**D. Plaintiff's Third and Fourth Causes of Action – Title VI of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d, *et seq.* – fails to demonstrate that Defendants intentionally discriminated against Plaintiff in implementing a temporary IZD.**

**1. Plaintiff fails to state a claim for relief under the Third and Fourth Causes of Action.**

Pursuant to 42 U.S.C.A. § 2000d, "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[66] Plaintiff alleges that the City of New Orleans must, as a recipient of federal Community Block Grant ("CDBG"), certify to  the United States Department of Housing and Urban Development ("HUD") that it is taking actions to affirmatively further fair housing choice.[67] Plaintiff asserts that "[i]n spite of this certification, many of the City's actions have exacerbated the housing crisis."[68] Presumably, Plaintiff means that Defendants exacerbated the housing crisis by taking the zoning actions that are the subject of plaintiff's lawsuit.[69]  Plaintiff concludes, "the discrimination from which The Village is suffering will directly and adversely impact the right of the intended

---

[65]   Doc. 1, ¶ 133.
[66]   42 U.S.C.A. § 2000d. *See also* 24 C.F.R. § 1.1.
[67]   Doc. 1, ¶ 10.
[68]   Doc. 1, ¶ 11.
[69]   See, *e.g.*, Doc. 1, ¶¶ 12–17. "the New Orleans City Council acted to prevent the construction of Plaintiff's affordable, multi-family housing development."

beneficiaries of The Village's development and operation, which will disproportionately include African Americans and other racial minorities, to be free from discrimination."[70]

There are several flaws with this claim. First and foremost, Plaintiff makes no effort to show that its Proposed Development had any plan to accept any person who might receive any Federal financial assistance. It therefore does not make sense that Plaintiff could plausibly claim that any hypothetical persons receiving government assistance might be harmed by the IZD Motion in connection to Plaintiff's Proposed Development. In any event, for the reasons discussed in the context of Plaintiff's FHA claims, Plaintiff cannot show discriminatory intent. The zoning decisions at issue here merely temporarily delayed development in the Lower Coast of Algiers and were enacted in order to allow for appropriate impact studies regarding drainage, road and utility infrastructure, and environment.

In addition, Plaintiff cannot show that Plaintiff's actions reduced the stock of available housing. Although the IZD Motion paused all multi-family development in the Lower Coast of Algiers, that land was already undeveloped. Moreover, the IZD Motion merely delayed development during a time in which Plaintiff's Proposed Development was at its initial design review stage, and no building permits had been issued. It is purely speculative as to what Plaintiff's future development might be. Further, Plaintiff cannot show facts to support its contention that its Proposed Development would have attracted a greater proportion of minorities. As such, any claim that an effect on Plaintiff's Proposed Development

---

[70]   Doc. 1, ¶¶ 141 and 144.

"[F]actual allegations must be enough to raise a right to relief above the speculative level."[71] Plaintiff's allegations are purely conclusory and cannot support a claim that Defendants in any way intentionally discriminated against Plaintiff or anyone else in violation of the Civil Rights Act.

### 2. Plaintiff fails to state a Title VI Cause of Action against Freddie King, III, in his official capacity as a member of the New Orleans City Council.

Recipient is defined as "any State, political subdivision of any State, or instrumentality of any State or political subdivision, any public or private agency, institution, organization, or other entity, or any individual, in any State, to whom Federal financial assistance is extended, directly or through another recipient…" from the Department of Housing and Urban Development.[72] However, in Title VI claims individual defendants are not considered recipients of federal funds by definition because "they cannot be deemed an 'entity, public or private.'"[73] In this case, Plaintiff has made no allegation that Councilmember King was the recipient of federal funds, either directly or indirectly.  Therefore, any Title VI Cause of Action against Councilmember King should be dismissed.

### E. <u>Plaintiff's Fifth Cause of Action – Louisiana Equal Housing Opportunity Act La. R.S. § 51:2601, et seq. – is without merit.</u>

The Louisiana Equal Housing Opportunity Act is substantially equivalent to the FHA and makes it unlawful to racially discriminate against any person in the provision of services or

---

[71]   *Bell Atl. Corp.*, 550 U.S. at 555.
[72]   24 C.F.R. § 1.2(f).
[73]   *GEOD Corp. v. New Jersey Transit Corp.*, 678 F. Supp. 2d 276, 287 (D. N.J. 8/20/09).

facilities in connection with the sale or rental of a dwelling.[74] Plaintiff claims, without support, that the implementation of the interim zoning district was meant to obstruct and delay the Proposed Development due to a discriminatory motive related to the race of *likely* residents.[75]  Plaintiff further claims that the interim zoning district is illegitimate. However, Plaintiff dismissed her state court action, which was specifically filed to determine, under state law, whether the IZD Motion was arbitrary and capricious.[76]

Nevertheless, Louisiana jurisprudence provides that a "presumption of validity attaches to all zoning decisions ...."[77] As discussed previously, the purpose of IZD Motion was to allow the proper infrastructure studies before permitting a development in the entire area of Lower Coast of Algiers. This is inarguably a legitimate public welfare interest.  Plaintiff was no more impacted or harmed by this temporary pause than any other similarly situated potential multi-family development in the Lower Coast of Algiers.

Further, Plaintiff's Proposed Development remains in its design stage.  The Plaintiff has not applied for permits.  While Plaintiff's assertion is that the development is by right, it is subject to state law and local ordinances, not the Constitution, with regards to zoning.[78] Plaintiff speculates that the Proposed Development, which is presumably market-rate, will bring in a greater proportion of minorities than is in Lower Coast Algiers already. Plaintiff fails to offer any facts to

---

[74]   42 U.S.C. § 3601, et seq.; La. R.S. 51:2601, et seq., especially § 51:2606.
[75]   Doc. 1, ¶¶ 147-148.
[76]   *Stanton Square, LLC v. The City of New Orleans and the New Orleans City Council*, CDC No. 2023-0184, Civil District Court, Orleans Parish, State of Louisiana.
[77]   *Palermo Land Co. v. Plan. Comm'n of Calcasieu Par.*, 561 So.2d at 490.
[78]   *Sullivan Properties, Inc. v. City of Winter Springs*, 899 F. Supp. 587, 595 (M.D. Fla. 1995).

show that the motivations for IZD Motion were in any way racial. Plaintiff's claim is based on mere conjecture and should be dismissed.

**F.**  **Plaintiff's Sixth Cause of Action – Due Process Rights under 42 U.S.C. § 1983 and the Louisiana Constitution – are without merit because Plaintiff received ample notice and opportunity to be heard.**

The U.S. Court of Appeals, Fifth Circuit, established in *Da Vinci*,[79] "[t]o prevail on a substantive due process claim, [a plaintiff] must first establish that it held a constitutionally protected property right to which the Fourteenth Amendment's due process protection applies."[80] "To have a property interest in a benefit," a plaintiff must "have a legitimate claim of entitlement to it"; relevant entitlements are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."[81] If the benefit may be granted or denied at the discretion of government officials, it is not an entitlement.[82] Courts look for "'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow.'"[83]

Plaintiff avers that it possesses a liberty interest to engage in whatever legal business it elects to pursue, including the design and construction of a multi-family housing complex, free from Defendants' interference.[84] Pursuant to the *Ridgley*,[85] the Plaintiff has failed to prove it has a

---

[79]  *Da Vinci Inv., Ltd. P'ship v. Parker*, 622 F. App'x 367 (5th Cir. 2015).
[80]  *Simi Inv. Co., v. Harris Cnty.*, 236 F.3d 240, 249–50 (5th Cir.2000).
[81]  *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005) (citation and quotation marks omitted).
[82]  *Id*.
[83]  *Ridgely v. FEMA*, 512 F.3d 727, 735–36 (5th Cir.2008)(quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)).
[84]  *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991).
[85]  *Id*.

legitimate claim of entitlement or possesses a liberty interest to engage in whatever legal business because the city council has the discretion to grant or deny the benefit of its property interest. Further, under the ordinances city council members can grant or deny a development plan application within their discretion.  In the instant case, Plaintiff has not been denied by the city council but delayed in order to allow proper studies to assure the infrastructure of the community will not be negatively impacted by its multi-family development in a historically rural zone. Plaintiff has not asserted any claims that there is specific language that mandates or prohibits city council's ability to have discretion when deciding whether it should grant or deny a development plan application nor has it asserted that zoning matters are outside of the council's authority.  The issue is that Plaintiff believes its business interest outweighs the public's welfare as it concerns safety and environmental impact.

Plaintiff's procedural due process claims are without merit.  The instant matter is distinguishable from *Nasierowski*.  In *Nasierowski*, a landowner brought civil rights action against city because the city failed to afford the landowner notice and opportunity to be heard prior to the city's vote adopting zoning amendment which reclassified property.  In this instance, the Plaintiff received notice and had an opportunity to be heard before the council took any action.

### G. **If the Court dismisses only the Federal claims, the Court should decline supplemental jurisdiction over Plaintiff's state law claims.**

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution."[86] The "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."[87] Thus, in *Koerner*, the Court rejected a plaintiff's attempt to reconsider issues pending in a parallel state proceeding regarding a zoning appeal. The Court reasoned that although the plaintiff framed his claims as arising under federal law, the underlying issues – an action to enforce a zoning ordinance - were purely state law issues. The Court declared that federal courts would not inject themselves into such local issues.

In the instant case, if the Court dismisses Plaintiff's federal law claims in her Complaint but maintains the state law claims, Plaintiffs will have stated no viable federal claim against the Defendants. With no federal question remaining, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismiss Plaintiff's state law claims.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff has failed to present facts to support any of its causes of action. Plaintiff's request for relief, including its request for injunctive relief and request for issuance of a writ of mandamus, should therefore be denied and Plaintiff's Complaint should be dismissed.

---

[86]   28 U.S.C. § 1367(a).
[87]   *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir. 2011) (quoting *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F .2d 580, 587 (5th Cir. 1992)).

Respectfully submitted,


__/s/_ James Roquemore_____
**JAMES ROQUEMORE, LSBA #40335**
ASSISTANT CITY ATTORNEY
**SHAWN LINDSAY, LSBA #28466**
DEPUTY CITY ATTORNEY
**CORWIN ST. RAYMOND, LSBA #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSBA #23338**
CITY ATTORNEY
1300 PERDIDO STREET
CITY HALL - ROOM 5E03
NEW ORLEANS, LOUISIANA 70112
TELEPHONE:  (504) 658-9800
FACSIMILE:   (504) 658-9868
E-MAIL: james.roquemore@nola.gov

*Counsel for the City of New Orleans, New Orleans City Council, and Freddie King, III, in his official capacity as a member of the New Orleans City Council*