# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STANTON SQUARE, LLC | * | CIVIL ACTION |
|     Plaintiff | * | No. 2:23-cv-05733 |
| | * | |
| VERSUS | * | SECTION "O" |
| | * | JUDGE BRANDON S. LONG |
| THE CITY OF NEW ORLEANS, | * | |
| THE NEW ORLEANS CITY COUNCIL, and | * | |
| FREDDIE KING, III, | * | MAGISTRATE "5" |
| in his official capacity as a member of the | * | JUDGE MICHAEL NORTH |
| New Orleans City Council | * | |
|     Defendants | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## REPLY IN SUPPORT OF MOTION TO DISMISS

The Defendants, the City of New Orleans, the New Orleans City Council, and Freddie King, III, in his official capacity as a member of the New Orleans City Council ("Defendants"), respectfully offer this Reply to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (the "Opposition"), Doc. 21, and the United States of America's Statement of Interest of the United States (the "USA's Statement"), Doc. 22. Several flaws exist in Plaintiff's Opposition and the USA's Statement, which are discussed below.[1]

1. **Plaintiff's disparate impact claim fails because Plaintiff cannot demonstrate "robust causation".**

Under the Fair Housing Act ("FHA"),[2] a disparate-impact claim must demonstrate a robust causal connection between the defendant's challenged action and the alleged racial

---

[1] Unless otherwise noted, reference to arguments made in the Opposition include related arguments made in the USA's Statement. Any argument of Plaintiff or the USA not mentioned in this Reply is not conceded, but rather is considered to be sufficiently addressed in Defendant's Memorandum in Support of its Motion to Dismiss, Doc. 14-1.

[2] 42 U.S.C. §§ 3601-3619.

disparity.[3] The "robust causality" requirement for disparate impact FHA claims was first described by the United States Supreme Court in 2015 in the case of *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc*. ("*ICP*"). In *ICP*, a nonprofit organization alleged that the government "caused continued segregated housing patterns by its disproportionate allocation of tax credits" for low-income families, which resulted in a disproportionate number of grants being awarded in predominantly black inner-city areas.[4]

The Supreme Court ruled that disparate impact cases were valid, but emphasized that "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy causing that disparity [and that] defendants cannot be held liable for racial disparities they did not create."[5] The Court stated that "[a] plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make a prima facie case of disparate impact."[6]

The Fifth Circuit clarified *ICP*'s "robust causation" requirement in *Inclusive Communities Project v. Lincoln Property*.[7] In *Lincoln Property*, a property management company maintained a policy to refuse to rent to, or make units available in "White non-Hispanic areas" to persons participating in a federal voucher program. The Court held that the plaintiff's citation of "statistics establishing that more than 80% of the voucher holders in the Dallas area are black"[8] was not sufficient to demonstrate "robust causality" under *ICP*. The Court explained, "[a] robust causality requirement ensures that racial imbalance does not, without more, establish

---

[3] *See Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc*., 576 U.S. 519, 524, 135 S.Ct. 2507, 192 L.Ed.2d 514 (2015) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577, 129 S.Ct. 2658, 174 L.Ed.2d 490)(2009)); *Inclusive Communities Project v. Lincoln Prop*., 920 F.3d 890, 909 (5th Cir. 2019) (affirming grant of motion to dismiss disparate impact claim for failure to adequately allege causation)
[4] *Id*. at 526.
[5] 576 U.S. at 543.
[6] *Id*. at 543.
[7] *Lincoln Property*, 920 F.3d at 895-86.
[8] *Id*. at 897, 898.

a prima facie case of disparate impact and thus protects defendants from being held liable for racial disparities they did not create."[9] In addition, the Court noted that governmental policies "are not contrary to the disparate impact requirement, unless they are artificial arbitrary and unnecessary barriers."[10] As a result, the Court affirmed the dismissal of the plaintiff's complaint.

The Court discussed four potential approaches to "robust causation" as used by Federal Circuits. First, the Eighth Circuit in *Ellis v. City of Minneapolis* held that in order to demonstrate "robust causation," a plaintiff's allegations must "point to an artificial, arbitrary, and unnecessary policy causing the problematic disparity[.]"[11] The Court in *Lincoln Property*, applying *Ellis*, reasoned that the private landlords' decisions not to participate in the government Section 8 program could not be deemed to be artificial, arbitrary, or unnecessary to health and safety.[12] Second, under the Fourth Circuit's majority opinion in *Reyes v. Waples Mobile Home Park Limited Partnership*,[13] "statistical disparities must be sufficiently substantial that they raise the necessary inference of causation[.]"[14] The Court in *Lincoln Property* interpreted this to mean that robust causation could be found as a result of a change of policy that increased the number of minorities being adversely affected, which the Court found not to exist with respect to the "no voucher" policy in its case. Third, under the dissent in *Reyes*, disparate impact must be caused by the complained of action in order to give rise to liability. "[G]*eographical happenstance* cannot give rise to liability against and entity not responsible for the geographical distribution."[15] The Court in *Lincoln Property* concluded that no robust causation was alleged in its "no voucher"

---

[9] *Id.* at 902 (punctuation omitted, quoting *ICP*, 576 U.S. at 542).
[10] *Id.* at 903.
[11] *Id.* 920 F.3d at 904 (punctuation omitted, citing *Ellis v. City of Minneapolis*, 860 F.3d 1106, 1114 (8th Cir. 2017).
[12] *Id.*
[13] 903 F.3d 415.
[14] *Lincoln Property*, 920 F.3d at 904 (quoting *Reyes*, 903 F.3d at 425).
[15] *Lincoln Property*, 920 F.3d at 905 (quoting *Reyes*, 903 F.3d at 434-45 (Keenan, J., dissenting) (emphasis in original).

case because no allegation supported an inference that the "no vouchers" policy caused any racial disparity in voucher holders in the relevant geographic area. Fourth, the Eleventh Circuit in *Oviedo Town Ctr., II, L.L.P. v. City of Oviedo, Florida*,[16] "robust causation" was means of "cabining" disparate impact liability.[17] Under this approach, the robust causality requirement ensures that "racial imbalance does not, without more, establish a prima facie disparate impact."[18] The Court in *Lincoln Property* found that robust causation was not sufficiently alleged under this view, either.

In the present case, Plaintiff cannot demonstrate robust causation under any of the articulations considered by *Lincoln Property*. Under *Ellis*, Defendants' actions were not artificial, arbitrary, or unnecessary. Defendants' zoning action merely temporarily paused development of certain construction to evaluate the impact of development on the infrastructure. The focus on multi-family dwellings is attributable to the scale of impact multi-family developments would likely have to the affected rural area. Under the *Reyes* majority approach, in the present case, as in *Lincoln Property*, the Plaintiff's allegations do not "show or infer that [Defendants'] policy diminished the amount of rental opportunities for Arican American or Black prospective tenants previously available before [Defendants'] policy was implemented."[19] Under the *Reyes* dissent view, Plaintiff fails to allege that Defendants caused any racial disparity in the population of renters or persons in poverty. Finally, under *Oviedo*, Plaintiff can demonstrate only racial imbalance in a rental market, which is insufficient. *Oviedo* recognized that "if a disparate impact clam could be found on nothing more than a showing that a policy impacted more members of a protected class than nonmembers of protected classes, disparate

---

[16] 759 Fed.Appx. 828, 833-35, No. 17-14254, 2018 WL 6822693, *4 (Dec. 28, 2018).
[17] *Lincoln Property*, 920 F.3d at 905 (quoting *Oviedo*, 759 Fed.Appx. at 833-834).
[18] *Id.* (quoting *Oviedo*, at 834) (punctuation omitted).
[19] *Id.* at 907.

impact liability undeniably would over burden cities and developers."[20] Here, under Plaintiff's theory, if it is successful, the Defendants would unable to create any policy or zoning ordinance affecting *any* rental properties without subjecting themselves to a lawsuit based on the FHA.

In Plaintiff's Opposition, Plaintiff ignores the requirement to demonstrate robust causation as set forth in *ICP* and *Lincoln Property*. Instead, Plaintiff asks the Court to adopt the standard set forth regulations of the Department of Housing and Urban Development ("HUD"), which omits the robust causation standard.[21] However, *Lincoln Property* expressly refused to adopt the HUD Regulation set forth in 24 C.F.R. § 100.500, relied upon by Plaintiff. As the Court explained, "We read the Supreme Court's opinion in *ICP* to undoubtedly announce a more demanding test than that set forth in the HUD regulation."[22] According to *Lincoln Property*, a "robust causation requirement" must be included at the prima facie stage.[23]

Nevertheless, Plaintiff asks the Court to recognize a "perpetuation of segregation" theory of disparate impact, which omits any element of robust causation.[24] *Lincoln Property* clearly forecloses this theory, declaring that "racial imbalance does not, without more, establish a prima facie case of disparate impact[.]"[25] Plaintiff cites *Dews v. Town of Sunnyvale*,[26] but that case was decided 15 years before *ICP*, and is obviously not persuasive. Plaintiff suggests that "robust causation" exists because Defendants' action "prevented Plaintiff from building [its rental

---

[20] 759 Fed.Appx. at 834.
[21] Opposition, p. 5, 6, fn 23 (citing "Joint Statement of the Dep't of Housing and Urban Dev. and the Dep't of Justice: *State and Local Land Use Laws and Practices and the Application of the Fair Housing Act*," Nov. 10, 2016, available at https://www.justice.gov/opa/file/912366/download ("HUD/DOJ Joint Statement") (relying on HUD's Discriminatory Effects Rule, 24 C.F.R. § 100.500).
[22] 920 F.3d at 902.
[23] *Id*.
[24] Opposition, p. 7 ("Perpetuation of segregation is a distinct theory of liability under the FHA"); pp. 14-15 "the renter population of New Orleans is disproportionately African American" and "the percentage of the New Orleans population living under the poverty level is disproportionately African American and Hispanic . . . a[and] people who live below the poverty level are more likely to be renters than homeowners."
[25] *Lincoln Property*, 920 F.3d at 02 (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 653 (1989), superseded by statute on other grounds, 42 U.S.C. § 2000e-2(k)).
[26] 109 F.Supp.2d 526, 564 (N.D. Tex 2000).

units]."[27] However, this allegation misses the point in that Plaintiff must show that Defendants' actions caused racial disparity in the rental market.[28]

The USA cites *Town of Huntington, N.Y. v. Huntington Branch, N.A.A.C.P*,[29] which was decided many years before the opinion in *ICP*. The instant case is factually distinguishable from *Town of Huntington* because the Defendants merely placed a temporary pause on multi-family development to study the impact of the development on a rural area, which currently is without public transportation or municipal services such as police fire, and emergency medical services.[30] Similarly, the case of *United States v. City of Black Jack, Mo*.[31] is inapt. The Court in *Black Jack* held that a zoning ordinance prohibiting construction of any new multi-family dwellings violated the FHA. However, *Black Jack* was pre-*ICP*. Further, unlike *Black Jack*, the zoning effect at issue in the present case was much more limited in scope and time.

Plaintiff cites *Greater New Orleans Fair Housing Action Center v. St. Bernard Parish*.[32] However, *St. Bernard Parish* was also decided pre-*ICP* and did not require that robust causation be demonstrated, which is required today.[33] *St. Bernard Parish* is also distinguishable on its facts. *St. Bernard Parish*, involved a "blood relative" ordinance after Hurricane Katrina which prohibited rentals to any person other than "blood relative[s]" in a section of city where residents were "88.3% Caucasian and 7.6% African–American."[34] Unlike the present case, the ordinance

---

[27] Opposition, p. 15.
[28] As discussed in Defendants' Memorandum in Support of Motion to Dismiss, Plaintiff's statistical evidence is vague, flawed, and focuses on geographic and population groups that are irrelevant; in addition, Plaintiff cannot demonstrate the economic or racial make-up of its potential tenants, and cannot state the price point with any particularity. For these additional reasons, Plaintiff's effort to articulate causation fails.
[29] 488 U.S. 15, 16-18 (1988).
[30] In addition, in *Greater New Orleans Fair Housing Action Center v. St. Bernard Parish*, 641 F.Supp. 2d 563, 577 (E.D. La. 2009), Judge Berrigan expressly declined to recognize *Town of Huntington* because the case did not include an assessment of intent and was not rigorous enough.
[31] 508 F.2d 1179 (8th Cir. 1974).
[32] 641 F.Supp.2d 563, 567-68 (E.D. La. 2009).
[33] Opposition, (*passim*), pp. 9,
[34] 641 F.Supp.2d at 565, 569.

at issue in *St. Bernard Parish* was expressly and directly based on racial make-up, which was dependent on the "blood" of the potential tenant. In the instant case, however, the IZD affects only multi-family dwellings, which are not dependent on any particular racial make-up.

In the present case, unlike the plaintiff in *St. Bernard Parish*, Plaintiff cannot specify the income levels for potential tenants of its project; the Plaintiff only vaguely refers to its development as "affordable housing" and refers to HUD metrics without explaining the prices at which its units will be rented or whether any tenant will receive rental assistance. Plaintiff is unable to allege plausibly what the racial makeup of Plaintiff's development will be. FHA claims must show discrimination to prospective residents, not prospective developers.[35] Thus, even under the standard set in *St. Bernard Parish*, Plaintiff is unable to state a disparate impact claim.

2. **Plaintiff's claim of intentional discrimination fails because Plaintiff and the USA cannot demonstrate any racial motive or pretext in connection with Defendants' zoning decision**.

A disparate treatment claim under the FHA must allege that "the defendant had a discriminatory intent or motive[.]"[36] Two elements must be shown: (1) that Defendant's stated reasons were false (i.e., pretext), and (2) that race was a significant factor.[37] The Supreme Court in *Village of Arlington Heights*[38] identified factors that may indicate discriminatory intent: (1) the historical background of the challenged decision;[39] (2) the specific sequence of events leading up to the challenged decision; (3) departures from the normal procedural sequence; (4) substantive departures, particularly if the factors usually considered important by the

---

[35] See *Sims v. Texas Department of Housing and Community Affairs*, No. 1:16-CV-906-LY, 2016 WL 6834023, at *3 (W.D. Tex. Nov. 18, 2016).
[36] *ICP.*, 576 U.S. at 524 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).
[37] *Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1555 (5th Cir. 1996).
[38] 429 U.S. 252 (1977) (holding that plaintiffs failed to carry their burden of proving that discriminatory purpose was a motivating factor in the Village's decision to rezone land from single-family to multiple-family classification).
[39] Plaintiff, in her Opposition, p. 8, improperly changes this factor to "historical background of discrimination," and cites *Rogers v. Lodge*, 458 U.S. 613, 625-26 (1982), a case that dealt with voting rights, not a FHA claim.

decisionmaker strongly favor a decision contrary to the one reached; and (5) the legislative or administrative history.[40] None of these factors support Plaintiff's claim.

The historical background of instant case involves undeveloped property surrounded by rural zoning that allows multi-family construction, which had not been changed for more than forty years.[41] Plaintiff's proposed development would significantly and permanently change the nature of that undeveloped land and surrounding rural areas. *Village of Arlington Heights* recognized that a normal sequence of events is shown where a zoning decision is made concerning the need to preserve long-standing characteristic of a tract of property.[42]

Further, the administrative process in this case was normal. The CPC, the recommending body, properly considered Plaintiff's proposal. Public hearings were properly held before the CPC and the City Council. The City Council is a legislative branch and is not bound by the CPC's recommendation. The Council's unanimous IZD decision appropriately completed the zoning process.[43] The stated purposes and timing of the IZD are appropriate when considering the need to maintain the status quo while additional information is studied and evaluated. No *Village of Arlington Heights* factor supports Plaintiff's claim.

Plaintiff refers to a prior lawsuit involving the City of New Orleans involving "zoning tactics."[44] That case, a 2012 lawsuit entitled *United States v. City of New Orleans*, No. CIV.A. 12-2001, involved housing for persons with disabilities and was settled without an admission of

---

[40] *Id*. at 267–68 (footnote omitted)
[41] Doc. 1, ¶¶ 20-25.
[42] *Village of Arlington Heights*, 429 U.S. at 269 (noting that current zoning had been in effect for 18 years and "the Village is undeniably committed to single-family homes as its dominant residential land use.").
[43] See *Hallmark Devs., Inc. v. Fulton Cnty*., Ga., 466 F.3d 1276, 1281 (11th Cir. 2006) (city council's rejection of multiple planning boards' recommendation to approve project did not indicate sequence of events that supported a claim of racial motivation).
[44] Opposition, p. 8; Doc. 1, ¶ 13. See also Opposition, p.9 (citing *United States v. City of New Orleans*, No. CIV.A. 12-2001, 2012 WL 6085081, at *9 (E.D. La. Dec. 6, 2012).

fault.[45] As part of the settlement, the City agreed to undergo training and to undertake remedial measures with respect to persons with disabilities.[46] That lawsuit has no relevance to this case.

Plaintiff's claim that Defendants "capitulated" to discrimination-based opposition to Plaintiff's proposed development are unfounded.[47] Nothing cited by Plaintiff concerning the neighborhood group's website, any of the three emails, or the two public comments, cited in Plaintiff's complaint is racial in nature and cannot plausibly be considered "coded" language.[48] These emails are nothing like the front-page editorial in the town newspaper in *St. Bernard Parish*, which the Court deemed to racially motivated.[49] Moreover, there is no allegation that Defendants discussed or considered any potentially comments by speakers at public hearings.[50]

The facts of the present case are strikingly similar to *Hallmark Devs., Inc. v. Fulton Cnty., Ga.*[51] In *Hallmark*, a property developer sought to build low-income housing.[52] At a zoning hearing, some members of the community opposed the project because it was not "upscale," would house "transient" people, and was priced too low.[53] Despite community opposition, planning boards recommended approval, but the city commission disagreed. The Court ruled that the evidence did not show discriminatory intent because it did not how that the

---

[45] *United States v. City of New Orleans*, No. CIV.A. 12-2001, Doc. 128, April 21, 2014 (Settlement); and Doc. 127, April 21, 2014 (Order approving settlement).
[46] *Id*.
[47] Doc. 1, ¶ 46.
[48] *Id*., ¶¶45-47. See *Macone v. Town of Wakefield*, 277 F.3d 1, 7 (1st Cir. 2002) (board member's comment, "I don't think that gives the flavor to what we want," was not coded racial language); *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 743-44 (1st Cir. 1995) ("these young kids, who don't even live in Dedham," and "undesirable element" not coded racial language); *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1292 (7th Cir. 1977) ("The bigoted comments of a few citizens, even those with power, should not invalidate action which in fact has a legitimate basis.")
[49] *St. Bernard Parish*, 641 F.Supp.2d at 571 (editorial warning that "high-density housing" would lead to "a ghetto with drugs, crime, vandalism, and violence.").
[50] See *Village of Arlington Heights*, 429 U.S. at 269 (noting that the statements at zoning hearing "focused almost exclusively on the zoning aspects").
[51] 466 F.3d 1276, 1283 (11th Cir. 2006).
[52] 466 F.3d at 1281.
[53] *Id*.

board was aware of community members' racist attitudes or that the board's zoning decision was improper.[54] The Court stated that the statements made at the board hearings "demonstrated class, not racial, animus" and "[w]ealth is not a proxy for race."[55] And that is also the case here.[56]

## CONCLUSION

For the foregoing reasons, Defendant seeks dismissal of Plaintiff's Complaint.

Respectfully submitted,

__/s/_ James Roquemore_____
**JAMES ROQUEMORE, LSBA #40335**
ASSISTANT CITY ATTORNEY
**SHAWN LINDSAY, LSBA #28466**
DEPUTY CITY ATTORNEY
**CORWIN ST. RAYMOND, LSBA #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSBA #23338**
CITY ATTORNEY
1300 PERDIDO STREET
CITY HALL - ROOM 5E03
NEW ORLEANS, LOUISIANA 70112
TELEPHONE:  (504) 658-9800
FACSIMILE:   (504) 658-9868
E-MAIL: james.roquemore@nola.gov

*Counsel for the City of New Orleans, New Orleans City Council, and Freddie King, III, in his official capacity as a member of the New Orleans City Council*

---

[54] *Id* at 1284.
[55] *Id*. at 1285.
[56] The arguments made by Plaintiff and USA regarding Plaintiff's remaining claims are, for the reasons stated in Defendants' Memorandum in Support of Motion to Dismiss, without merit.