UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STANTON SQUARE, LLC | * | CIVIL ACTION |
|     Plaintiff | * | No. 2:23-cv-05733 |
| | * | |
| VERSUS | * | SECTION "D" |
| | * | JUDGE BRANDON S. LONG |
| THE CITY OF NEW ORLEANS, | * | |
| THE NEW ORLEANS CITY COUNCIL, and | * | |
| FREEDIE KING, III, | * | MAGISTRATE "5" |
| in his official capacity as a member of the | * | JUDGE MICHAEL NORTH |
| New Orleans   City Council | * | |
|     Defendants | * | |
| | * | |

*******************************************

**RESPONSE AND OPPOSITION TO
PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

Defendants, the City of New Orleans, the New Orleans City Council, and Freddie King, III, in his official capacity as a member of the New Orleans City Council ("Defendants"), oppose Plaintiff's Motion for Leave to Amend Complaint (R. Doc. 35) (the "Motion"), and respectfully show the following.

**INTRODUCTION AND PROCEDURAL BACKGROUND**

This case arises out of Defendants' exercise of zoning power to pause development in an undeveloped rural area. Defendants implemented the "interim zoning district" (the "IZD") that is the subject of this case for the expressed purpose to "allow for the appropriate impact studies regarding drainage, road and utility infrastructure, municipal services for fire, police, emergency response services, and other public safety considerations, and an environmental impact analysis."[1] An effect of the IZD was to delay construction of Plaintiff's proposed 278-unit multi-family rental

---

[1] Complaint for Injunctive, Declaratory, and Monetary Relief ("Original Complaint") (R. Doc. 1), ¶ 53; Supplemental, Amending, and Restated Complaint for Injunctive, Declaratory, and Monetary Relief ("Amended Complaint") (R. Doc. 35-2), ¶ 73.

1

development (and similarly situated developments by other potential developers).[2] Plaintiff claims that the Defendants' intent in implementing the IZD was racial discrimination, rather than proper land use governance; the instant lawsuit ensued.

On October 3, 2023, Plaintiff filed her Original Complaint and claimed that the IZD violated the Fair Housing Act (the "FHA")[3] and other Federal and State laws.[4] On November 17, 2023, Defendants filed their Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that Plaintiff failed to state a plausible claim under the FHA or other law.[5] The United States filed a Statement of Interest regarding the Motion to Dismiss on December 29, 2023.[6] The Motion to Dismiss remains pending before the Court.

On April 26, 2024, Plaintiff filed an *Ex Parte* Motion for Entry of an Order Setting Scheduling Conference.[7] A scheduling conference was conducted, and a Scheduling Order was issued on June 6, 2024.[8] The Scheduling Order set a deadline of July 5, 2024, for amendments to pleadings. On July 3, 2024, Plaintiff filed the instant Motion, seeking leave to amend its complaint.

## ARGUMENT

Federal Rule of Civil Procedure 15(a)(2) provides, "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."[9] The court must grant leave unless there is good reason to deny it.[10] The

---

[2] Original Complaint, ¶ 54; Amended Complaint ¶ 74.
[3] Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601, *et. seq*.
[4] Original Complaint, ¶¶ 9-10, 123-163; Amended Complaint ¶¶ 9-10, 155-195.
[5] *See* R. Doc. 21, Defendants' Motion to Dismiss and R. Doc. 24, Defendants' Reply in Support of Motion to Dismiss.
[6] R. Doc. 22. Although the United States is entitled by statute to file a statement of interest in this case, its interpretation of Federal law is not entitled to deference. See *Loper Bright Enterprises v. Raimondo*, ___ U.S. ___, 144 S. Ct. 2244, p. 26 (2024) (overruling *Chevron v. Natural Resources Defense Council, Inc*., 467 U.S. 837 (1984), holding that Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority").
[7] R. Doc. 30.
[8] R. Doc. 34.
[9] Fed. R. Civ. P. 15(a)(2).
[10] *Stem v. Gomez*, 813 F.3d 205, 215–16 (5th Cir. 2016).

Supreme Court recognizes that futility is a good reason to deny a motion for leave to amend.[11] "Futility" "mean[s] that the amended complaint would fail to state a claim upon which relief could be granted."[12] To determine futility, the Fifth Circuit applies standard of legal sufficiency applicable to Rule 12(b)(6).[13]

In the instant case, the Amended Complaint is futile. It contains the same flaws as the Original Complaint, which itself should be dismissed for failure to state a claim.[14] As Plaintiff states in its Motion, "Plaintiff's new allegations serve only to provide additional factual allegations supporting Plaintiff's claims for violations of the Fair Housing Act, the Civil Rights Act, and of the United States and Louisiana Constitutions."[15] The Amended Complaint is therefore subject to dismissal under the standards of Rule 12(b)(6) for the same reasons set forth in Defendants' Motion to Dismiss.[16] Plaintiff's Motion should be denied.

   **1. Futility of Plaintiff's FHA claims**

In the Amended Complaint, Plaintiff alleges that the IZD violated the FHA in two ways: (1) the IZD was enacted "based on discriminatory motives" (*i.e.*, intentional discrimination);[17] and (2) the IZD "impose[d] a disproportionate harm on African Americans and other minorities by depriving them of affordable housing" and "perpetuate[d] and reinforce[d] patterns of segregation in the City of New Orleans and its housing market" (*i.e.,* disparate impact).[18] Neither of these claims is adequately pleaded; both should be dismissed.

---

[11] *Foman v. Davis*, 371 U.S. 178, 182 (1962).
[12] *Stipling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).
[13] *Id*.
[14] Defendants incorporate by reference their Motion to Dismiss (and memorandum in support) (R. Doc. 21, 21-1) and Reply (R. Doc. 24) into this response to Plaintiff's Motion.
[15] R. Doc. 35-1, p. 4.
[16] *Velasquez v. Johnson*, 2017 WL 11713717 (S.D. Tex., March 27, 2017) (proposed amendment was futile where 12(b)(6) analysis is not changed).
[17] Amended Complaint, ¶ 158.
[18] Amended Complaint, ¶ 159, 160.

### a. The claim of intentional discrimination fails because Plaintiff cannot plausibly allege pretext or racial motivation.

A claim of intentional discrimination under the FHA must allege two elements: (1) the stated reasons for the complained of action were false (i.e., pretext), and (2) race was a significant factor.[19] Plaintiff's Amended Complaint fails to adequately allege either element.

First, Plaintiff fails to allege facts that could plausibly support pretext.[20] Plaintiff admitted in her Original Complaint that the property it sought to develop into a large-scale multi-family development was "an *undeveloped* tract of forested land."[21] However, Plaintiff backtracked on this allegation in in the Amended Complaint, and omitted the word "undeveloped"; Plaintiff added a new allegation that "much of the infrastructure necessary for developing the Village—including water, sewer, and drainage service, all with ample capacity—was in place at the time Plaintiff purchased the Property."[22] In addition, Plaintiff alleged in the Amended Complaint that "work had not begun on any of the studies that were used to justify [the IZD's] passage."[23]

However, these allegations, even if assumed to be true, support only one plausible conclusion: Defendants' purpose in enacting the IZD was to maintain the status quo in order to evaluate the impact of development of multi-family units on the undeveloped tract of forested land subject to the IZD. It is without question that Plaintiff's proposed development would have permanently changed the nature of the IZD zoning district and would have caused radical changes to infrastructure requirements in the area. The need to study the suitability of current zoning was acute because the zoning classification had not been reevaluated "since the 1980's."[24] Plaintiff's

---

[19] *Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1555 (5th Cir. 1996).
[20] Amended Complaint, ¶ 73.
[21] Original Complaint, ¶ 19 (emphasis added) Compare Amended Complaint, ¶ 38 (". . . the Property, a tract of forested land . . .").
[22] Amended Complaint, ¶ 39.
[23] *Id*., 115.
[24] *Id*., ¶ 40.

allegations concerning pretext are therefore not plausible.

Second, Plaintiff fails to plausibly allege racial motivation. Plaintiff cannot allege direct evidence of racial motivation on the part of Defendants because there is none. Rather, Plaintiff relies entirely on purported circumstantial evidence. However, Plaintiff's allegations fail to demonstrate any pattern to suggest intentional racial discrimination by Defendants.[25] For example, in the Amended Complaint, Plaintiff alleges that New Orleans is segregated and needs affordable housing.[26] Plaintiff does not explain how Defendants caused such segregation, although Plaintiff suggests that segregation in the "English Turn area" may be due to "White flight."[27] Defendants obviously did not cause "White flight." In addition, Plaintiff asserts, without factual support, that Defendant have used "discriminatory zoning tactics" in the past.[28] Plaintiff cites a case filed "[i]n recent years" by the United States; however, this case dealt with persons with disabilities, not racial discrimination, so it does not indicate racial discrimination.[29] Further, Plaintiff fails to disclose that the case cited in its Amended Complaint was resolved without any admission of wrongdoing.

Plaintiff's primary theory for intentional discrimination is that Defendants were "influenced by the discriminatory invective coming from residents and organizations like the [English Turn Property Owners' Association]."[30] Plaintiff alleges that residents sent coded "discriminatory emails" to Defendants, Defendants capitulated, and Defendants then manipulated the IZD approval process to stop Plaintiff's development in order to satisfy the residents' racial

---

[25] Discriminatory intent may be demonstrated by circumstantial evidence in appropriate cases. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S.. 252 (1977) (pertinent circumstantial factors include: 1. Historical background; 2. Specific sequence of events leading to the decision; 3. Departures from normal procedures; 4. Substantive departures; 5. Legislative history, especially contemporary statements.).
[26] Amended Complaint, ¶¶ 20, 25.
[27] *Id*., ¶ 23.
[28] *Id*., ¶ 32.
[29] *United States v. City of New Orleans*, No. 12-2001, 2012 WL 6085081, *9 (E.D. La. Dec. 6, 2012) (this case was filed in 2012).
[30] Amended Complaint, ¶ 20.

5

animus.[31]

There are several holes in Plaintiff's theory. First, the emails and cited public comment do not indicate racial animus.[32] For example, the emails say:

- "'[A]partment complexes fail in New Orleans";

- Apartment complexes have issues with "residents living in less than adequate conditions, having high crime rates, and having concentrated health concerns & quality of life issues";

- "Every apartment complex built in this city failed miserably with people living in deplorable conditions, crime and other health concerns"; and

- the Plaintiff's project "does not mirror the residential density in the area"; and "[t]his development is an afront to our lifestyles."[33]

The language in these emails expresses at most, class animus, which is not actionable under the FHA.[34] Second, Plaintiff fails to indicate who, if anyone, received and/or read the quoted emails. It is therefore impossible to logically conclude that any Defendant could have been influenced by any such email. There is no factual reason to conclude that the cherry-picked emails cited by Plaintiff are representative of communications received, reviewed and relied upon by Defendants. Third, Plaintiff's allegations that Defendants departed from its normal procedures in implementing the IZD are conclusory and speculative. For example, Plaintiff, in the Amended

---

[31] *Id.*, ¶¶ 66, 99, 100.
[32] *See Macone v. Town of Wakefield*, 277 F.3d 1, 7 (1st Cir. 2002) (board member's comment, "I don't think that gives the flavor to what we want," was not coded racial language); *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 743-44 (1st Cir. 1995) ("these young kids, who don't even live in Dedham," and "undesirable element" not coded racial language); *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1292 (7th Cir. 1977) ("The bigoted comments of a few citizens, even those with power, should not invalidate action which in fact has a legitimate basis.")
[33] *Id.*, ¶ 66. See also ¶67, in which Plaintiff quotes minutes of an August 28, 2022, public hearing where participants expressed concern regarding "additional crime and traffic," "economic disinvestment or flight," and "taking care of families that would reside in the complex."
[34] *See Hallmark Devs., Inc. v. Fulton Cnty., Ga.*, 466 F.3d 1276, 1273 (11th Cir. 2006) (class animus is not actionable under the FHA).

Complaint, alleges that Plaintiff and other entities put Defendants "on notice of the discriminatory and practical consequences of passing the IZD," the IZD was nevertheless passed.[35] However, this is a bald legal conclusion. Similarly, Plaintiff alleges that the IZD "is a departure from procedure" according to an entity that "regularly monitors City actions[.]"[36] This statement, too, is a conclusion that should be disregarded. The fact that an outside party makes this conclusion does not change its nature. As such, there are no facts alleged from which a plausible conclusion could be reached that the process that resulted in the IZD was a departure from normal procedure.

For these reasons, Plaintiff's claim that Defendant intentionally discriminated against Plaintiff is not plausible and should be dismissed.

### b. The claim of disparate impact fails because Plaintiff cannot demonstrate robust causation.

In *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.* ("*ICP*"),[37] the Supreme Court imposed a "robust causality" requirement for FHA disparate impact claims. Under this rubric, a plaintiff must allege facts or produce statistical evidence at the pleading stage demonstrating a causal connection between the challenged policy and a racial imbalance at the facility.[38] The Court explained, "if [a plaintiff] cannot show a causal connection between the [defendant's] policy and a disparate impact . . . that should result in dismissal of this case."[39] Pursuant to *ICP*, a robust causation requirement means that "[a] plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection [between a challenged policy and a racial imbalance] cannot make out a prima facie case of

---

[35] *Id.*, ¶ 94.
[36] *Id.*, ¶ 100.
[37] 576 U.S. 519, 524 (2015).
[38] *Id.*, at 543.
[39] *Id.*

7

disparate impact."[40]

In the instant case, Plaintiff and the United States erroneously argue that a less rigorous, "predictably will cause" standard, should apply to Plaintiff's disparate impact claim.[41] This standard comes from Department of Housing and Urban Development ("HUD") regulations. However, the Fifth Circuit, in *Inclusive Cmtys. Project v. Lincoln Prop. Co.*,[42] declared that *ICP* "purposefu[ly] and signicant[ly]" modified HUD regulation to require a showing of robust causation.[43] The Court stated that *ICP* requires a "more demanding" test than the HUD regulation, because the HUD standard has no robust causation requirement.[44] Accordingly Plaintiff's attempted use of this standard should be rejected.[45]

Plaintiff's disparate impact claim, as articulated in the Amended Complaint, is deficient in several respects. In the Amended Complaint, Plaintiff cites statistics concerning the racial makeup of Orleans Parish, the likelihood of non-White people to rent, and segregation in Orleans Parish.[46] Plaintiff's "estimate" of the racial makeup of its proposed development based on these statistics is wholly speculative because no basis is given to concluded that the development's racial makeup will be the same as the demographics of renters within 20 miles of the proposed development.[47] For this reason, alone, Plaintiff fails to adequately allege robust causation.

Further, Plaintiff fails to allege that Defendants caused any of the racial imbalance cited by Plaintiff. As the Fifth Circuit stated in *Lincoln Property*, "[a] robust causality requirement ensures

---

40  *ICP*, 576 U.S. at 543.
41  See Amended Complaint, ¶¶ 158-160; R. Doc. 22, Statement of the United States, p. 5 (HUD regulations make clear that all Plaintiff needs to do is show that a practice "actually or predictably results in a disparate impact[.]").
42  *Inclusive Cmtys. Project v. Lincoln Prop. Co*., 920 F.3d 890, 902 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 2506 (2020).
43  *Id*.
44  *Id*.
45  On a motion to dismiss a plaintiff is not entitled to any advantage in resolving questions of law such as the proper legal standard. See e.g., *Beavers v. Metro. Life Ins. Co*., 566 F.3d 436, 439 (5th Cir. 2009).
46  Amended Complaint, ¶¶ 21, 23 (segregation); 117 (Orleans Parish); 118 (renters).
47  *Id*., ¶ 120.

that racial imbalance does not, without more, establish a prima facie case of disparate impact and thus protects defendants from being held liable for racial disparities they did not create."[48] It cannot be argued that the IZD at issue in this case created any racial disparities or housing shortages for minorities because the IZD did not change anything; the IZD kept the status quo. Defendants did not cause any disparity described by Plaintiff's statistics. Rather, the disparities cited by Plaintiff are wholly dependent on geography, which cannot form the basis of a disparate impact claim. According to the Fifth Circuit in *Lincoln Property*, "geographical happenstance cannot give rise to liability against an entity not responsible for the geographical distribution."[49] For this reason, Plaintiff's allegations, including an allegation that Defendant's actions "perpetuate and reinforce patterns of segregation," fail to allege robust causation.[50]

If Plaintiff's theory of liability were accepted, absurd results would follow. Governmental entities would be subject to FHA liability merely by regulating rental properties, since, according to Plaintiff's view, such regulation would disparately impact racial minorities. This would conflict with the Fifth Circuit's recognition "as to the limited nature of the disparate impact claim that exists under the FHA" post-*ICP* and the need to causally link the challenged policy to any imbalance.[51] The Supreme Court has emphatically stated that "[t]hese limitations are also necessary to protect defendants against abusive disparate-impact claims."[52]

## 2. **Futility of remaining claims.**

The Plaintiff's remaining claims fail to state a claim for the reasons set forth in the memorandum in support of Defendant's Motion to Dismiss, which has been incorporated herein.

---

48  *Id.* at 902 (punctuation omitted, quoting *ICP*, 576 U.S. at 542).
49  920 F.3d at 906 (quoting *Reyes v. Waples Mobile Home Park Limited Partnership*, 903 F.3d 415, 434 (4th Cir. 2018).
50  *See* Amended Complaint, ¶¶ 122, 123.
51  *Lincoln Prop.*, 920 F.3d at 903.
52  ICP, 576 U.S. at 522.

9

Defendants rely upon the argument contained in that pleading to show the futility of the Amended Complaint.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be denied.

Respectfully submitted,

  /s/ *Shawn Lindsay*
**SHAWN LINDSAY, LSBA #28466**
DEPUTY CITY ATTORNEY
**JAMES ROUQUEMORE, LSBA #40335**
ASSISTANT CITY ATTORNEY
**CORWIN ST. RAYMOND, LSBA #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSBA #23338**
CITY ATTORNEY
1300 PERDIDO STREET
CITY HALL - ROOM 5E03
NEW ORLEANS, LOUISIANA 70112
TELEPHONE: (504) 658-9800
FACSIMILE: (504) 658-9868
E-MAIL: slindsay@nola.gov

*Counsel for the City of New Orleans, New Orleans City Council, and Freddie King, III, in his official capacity as a member of the New Orleans City Council*