**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| STANTON SQUARE, LLC, | |
|      Plaintiff, | CIVIL ACTION NO. 2:23-cv-05733 |
| v. | JUDGE: Brandon S. Long |
| THE CITY OF NEW ORLEANS, THE NEW ORLEANS CITY COUNCIL, and FREDDIE KING, III, in his official capacity as a member of the New Orleans City Council, | MAGISTRATE: Michael North |
|      Defendants. | |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT

Plaintiff hereby submits this Reply in Support of its Motion for Leave to Amend the Complaint, which seeks to add allegations regarding events occurring and facts gathered since the original complaint was filed. Defendants raise a single objection to the Amended Complaint—that amendment would be futile. Under the preferred approach followed in the Fifth Circuit, Plaintiff should be permitted to amend its complaint and Defendants' arguments about the sufficiency of Plaintiff's allegations can and should be addressed through the pending Motion to Dismiss. Even so, Defendants fail to show that Plaintiff's claims are futile under the governing standard. Accordingly, Plaintiff's Motion to Amend should be granted.

**I.    Plaintiff's Motion for Leave to Amend Should be Granted in Light of Defendants' Futility-Exclusive Opposition and the Pending Motion to Dismiss**

While there are multiple bases for opposing a motion to amend a complaint—undue delay, bad faith motive, repeated deficiency, prejudice, and futility—Defendants respond to Plaintiff's Motion for Leave to Amend with the sole argument that Plaintiff's claims are futile. It

would be inefficient and an unnecessary use of judicial resources for this Court to rule on Defendants' futility argument because these very issues will soon be decided by Judge Long.

The standard for determining futility in the motion for leave to amend context is the same as the standard of legal sufficiency under Fed. R. Civ. P. 12(b)(6). *Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 873 (5ᵗʰ Cir. 2000). In their opposition to the present motion, Defendants raise identical arguments to those raised in their motion to dismiss, which is currently pending before Judge Long. Defendants incorporate by reference the arguments made in their Motion to Dismiss and argue that the proposed amended complaint is futile "for the same reasons set forth in Defendants' Motion to Dismiss." Dfs. Opp. to Mot. for Leave to Amend ("Dfs. Opp.") (Dkt. 38) at 3 & n.14. In deciding the motion to dismiss, Judge Long will assess Defendants' arguments under the same standard as if they were considered in this context, and it would be inefficient for this Court to decide the very issues pending before Judge Long.

As a general matter, when a plaintiff seeks to amend a complaint while a motion to dismiss is pending, the "preferred course is to grant leave to amend." *Louisiana v. Bank of Am. Corp.*, No. CV 19-638, 2020 WL 3966875, at *2 (M.D. La. July 13, 2020) (quotation omitted); *see also Biwen Liang v. Home Reno Concepts LLC*, 2018 WL 1401801, at *3 (E.D.N.Y. Mar. 19, 2018) ("It is a far better conservation of judicial and party resources to permit the amendment . . . and let any order on a motion to dismiss determine the facial validity of the . . . claim."). This approach avoids piecemeal or duplicative processes to finally resolve the plausibility of a plaintiff's complaint. That principle applies where, as here, the proposed amendment directly relates to a defendant's arguments for dismissal. As detailed below, Defendants challenge whether Plaintiff's allegations support either disparate treatment or impact claims under the Fair Housing Act (FHA). The events described by Plaintiff in the amended complaint, including more

2

statements suggesting discriminatory intent, provide additional support for Plaintiff's disparate treatment claims. The supplementary data related to the race and national origin of the people likely deprived of housing opportunities due to Defendants' actions provide further evidence that Defendants' actions blocking the development of Stanton Square have a disproportionate adverse effect on Black and Latino households and perpetuate the high levels of segregation in the area.

Finally, allowing amendment and deferring consideration of futility arguments to the pending motion to dismiss is particularly appropriate where, as here, the motion to amend has been referred. The Court in *City of Baton Rouge/E. Baton Rouge Par. v. Bank of Am., N.A.* was presented with a nearly identical procedural scenario and rejected the defendants' futility argument because to do otherwise would require the Court to "address issues raised in the motions to dismiss pending before the district court." No. CV 19-725, 2020 WL 13033205, at *3 (M.D. La. Apr. 20, 2020). The Court refrained from deciding "substantive issues that have not been referred" and held that futility arguments based on "the sufficiency of claims pled are best determined in the context of resolving the pending substantive Motions to Dismiss … and/or any subsequently filed motions addressing substantive issues." *Id.*

Given the current procedural posture, the Court should grant Plaintiff's Motion for Leave to Amend and allow Judge Long the opportunity to determine the sufficiency of Plaintiff's claims through Defendants' pending Motion to Dismiss.

## II.    Plaintiff Has Adequately Pleaded Disparate Treatment and Disparate Impact Claims Under the Relevant Anti-Discrimination Laws

Even if the Court were to take up Defendants' futility arguments prior to Judge Long resolving Defendants' Motion to Dismiss, the Court would find that Plaintiff's claims are well-supported and easily clear the plausibility bar.

A.    Plaintiff Has Stated a Claim for Intentional Discrimination

Plaintiff sufficiently alleges discriminatory intent under the FHA, the Louisiana Equal Opportunity Act, and Title VI. At the motion to dismiss stage, Plaintiff must only demonstrate that a protected trait was a "significant factor" in Defendants' actions. *See Greater New Orleans Fair Hous. Action Ctr. v. Kelly*, 364 F. Supp. 3d 635, 650 (E.D. La. 2019); *see also* Plaintiff's Opposition to the Motion to Dismiss ("Pl. Opp. to MTD") (Dkt. 21). A non-exhaustive list of substantive factors for assessing whether discrimination was a factor in a challenged decision was laid out in *Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–67 (1977). In opposing the motion to dismiss, Plaintiff described how its allegations support a finding of discriminatory intent under the *Arlington Heights* factors: (1) historical background of the challenged decision, (2) the specific sequence of events leading up to the challenged decision, (3) departures from normal procedural sequence, (4) substantive departures, (5) legislative history, and (6) disproportionate impact. *See* Pl. Opp. to MTD at 7–13. Plaintiff summarizes that analysis here.

The history of discrimination by Defendant City of New Orleans is a strong factor militating towards a finding of discriminatory intent. As the Supreme Court has noted, "[e]vidence of historical discrimination is relevant to drawing an inference of purposeful discrimination," and is particularly relevant where it is the same actor carrying out the actions. *See Rogers v. Lodge*, 458 U.S. 613, 625–26 (1982). Defendant City of New Orleans has faced successful challenges to similar actions in the past. *See, e.g.*, *United States v. City of New Orleans*, No. CIV.A. 12-2011, 2012 WL 6085081, at *9 (E.D. La. Dec. 6, 2012).

The sequence of events also points toward Defendants' having discriminatory intent. Plaintiff's property had been zoned for multi-family development for nearly half a century, and the city initially had no objection to the project. *See* Plaintiff's Proposed First Amended

Complaint (FAC) (Dkt. 35-2) ¶¶ 40, 59–60. However, when discriminatory backlash to Plaintiff's project materialized, the City suddenly changed tack and blocked the project. *See id.* ¶¶ 63–77. The fact that the support "immediately eroded" after the community expressed discriminatory opposition to the project suggests discriminatory intent. *See Greater New Orleans Fair Housing Action Center v. St. Bernard Par.*, 641 F. Supp. 2d 563, 573 (E.D. La. 2009) ("*St. Bernard Parish I*"); s*ee also United States v. City of New Orleans*, 2012 WL 6085081, at *9 (denying motion to dismiss and collecting cases holding that discriminatory intent may be inferred from municipal defendants acceding to discriminatory "community opposition expressed at the hearings").

The factors of "departure from ordinary procedure" and "substantive departure from ordinary procedures," also suggest discriminatory intent. *Arlington Heights*, 429 U.S. at 267. Procedural departures exist if, for example, a routine process is delayed or denied without justification. *See Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Par.*, 648 F. Supp. 2d 805, 813–15 (E.D. La. 2009) ("*St. Bernard Parish II*"). Substantive departures exist where "factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached." *St. Bernard Parish I*, 641 F. Supp. 2d at 574 (quotation omitted). Plaintiff has alleged both procedural and substantive departures. For example, the City Council rejected the unanimous City Planning Commission (CPC) recommendation against the Interim Zoning District (IZD), despite rarely deviating from CPC recommendations. *See* FAC ¶¶ 96–97, 100. The City Council overruled the CPC even though the CPC asserted that the IZD was "against the intent of the Master Plan." *See id.* ¶ 83. The CPC also noted that the IZD's justification was plainly pretextual because the environmental and infrastructural studies mandated by the IZD would be completed as part of the ordinary permitting process. *See id.* ¶¶ 108–112. These

allegations support a finding of discriminatory intent. *See, e.g.*, *U.S. v. City of New Orleans*, 2012 WL 6085081 at *9 (finding procedural and substantive departures where the municipality "acted against its own recommendation" in making a zoning decision and "provided no explanation" for it). Additional allegations included in the proposed First Amended Complaint further support a finding of procedural and substantive departures: The IZD was extended, and the only justifications provided by the City echo the discriminatory language of the neighborhood opponents and suggest a support for continued segregation. *See* FAC ¶¶ 102–104.

Fifth, the legislative history also points to discriminatory intent. *Arlington Heights*, 429 U.S. at 268. The legislative history indicates how Councilmember King recused himself from the initial IZD vote, presumably because he believed he had a conflict of interest in the IZD, only to later reverse course and sponsor the final IZD. *See* Pl. Opp. to MTD at 26. As discussed earlier, discriminatory intent may also be inferred from allegations in the Complaint about noticeable lack of official comment around the decision and that the racist public outcry was a factor in Defendants' decision to keep quiet. *See St. Bernard Parish I*, 641 F. Supp. 2d at 576–77.

Finally, *Arlington Heights* recognized that disproportionate effect on people of color is relevant to assessing discriminatory intent. 429 U.S. at 265. Here, as discussed below, Defendants' actions had a disparate impact on Black and Latino households and families with children by restricting the amount of available affordable housing for low- and middle-income households in the area. The amended complaint provides even more detail on how the project would be disproportionately occupied by racial and ethnic minorities and help reduce segregation in the area.

Ignoring Plaintiff's well-pleaded allegations that support a finding of discrimination under *Arlington Heights*, Defendants' claim that the IZD was enacted to "maintain the status quo

6

in order to evaluate the impact of development of multi-family units on the undeveloped tract of land." Dfs. Opp. at 4. It is of course inappropriate to answer the factual question of whether Defendants can overcome a *prima facie* showing of discrimination by offering an alternative explanation for their actions at this stage. *See Thomas v. Dallas Indep. Sch. Dist.*, No. 23-10882, 2024 WL 2874367, at *5 (5th Cir. June 7, 2024) (holding in an analogous analysis that "whether [a defendant] had non-discriminatory reasons" for its actions is a "question[] for summary judgment rather than a motion to dismiss."). Nonetheless, Defendants' argument is untenable in the face of allegations that (1) the CPC rejected that precise assertion when it voted against the IZD, FAC ¶¶ 81–87; (2) the property has been zoned for multi-family development for almost fifty years, *id.* ¶ 40; (3) the infrastructure studies that Defendants use as justification for the IZD are already part of the ordinary permitting process, *id.* ¶¶ 108–112; and (4) Defendants have not started on the studies that they asserted the IZD would give them time to pursue, *id.* ¶ 115. The allegations are more than sufficient to support an inference that Defendants' explanation of maintaining the status quo is pretextual. A factual dispute over Defendants' true motivation is not a basis for finding Plaintiff's claims futile.

      B.    <u>Plaintiff Has Sufficiently Pleaded A Disparate Impact Claim</u>

     As Plaintiff described in its opposition to the motion to dismiss, the complaint sets forth sufficient allegations to sustain a disparate impact claim under the FHA. A disparate impact claim under the FHA must allege a policy or practice that has a disproportionately adverse effect on a protected class and is otherwise unjustified by a legitimate rationale. *See Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 524 (2015). In *Inclusive Communities*, the Supreme Court specifically identified "zoning laws … that function to exclude minorities from certain neighborhoods without any sufficient justification" as laws the FHA was intended to eradicate. *Id.* at 539. Lawsuits, like Plaintiff's, that "target[] such practices

reside at heartland of disparate-impact liability." *Id.* at 539–40 (collecting cases, including *St. Bernard Parish I*, 641 F. Supp. 2d at 569, 577–578.).

Plaintiff has sufficiently alleged a disparate impact claim: a policy or practice (proposing, enacting, extending, and enforcing the IZD) that operates to exclude Black and Latino households from a certain neighborhood by blocking multi-family housing opportunities like Plaintiff's proposed project. The proposed amended complaint alleges that the extension of the IZD for an additional six months continues to make such housing opportunities unavailable. *See* FAC ¶¶ 102–105.

Plaintiff further pleads the IZD has a disproportionately adverse effect on Black and Latino households and families with children by specifically blocking the construction of housing that would be disproportionately occupied by those protected groups. The data show that Black and Latino households are more likely to be renters and require low-cost housing as compared to White and childless households. Defendants dispute the accuracy of Plaintiff's statistics and the assumptions they are based on, but that factual dispute should not be resolved at this stage of the litigation.

Defendants respond to Plaintiff's disparate impact allegations primarily by arguing that Plaintiff does not meet the "robust causality" standard articulated by the Supreme Court in *Inclusive Properties.* Dfs. Opp. at 7–9. That argument is incorrect. Plaintiff's articulation of causality precisely tracks the Supreme Court's example of a cognizable disparate impact claim: a zoning law that disproportionately precludes members of a protected class from residing in a certain neighborhood. The IZD's prohibition on multi-family housing on the parcel Plaintiff proposed for the development prevents Plaintiff from building those units, which otherwise were permissible "as of right." Accordingly, the sole cause of Plaintiff's inability to build rental units

that would be disproportionately occupied by Black and Latino households and families with children is the IZD. These allegations meet the robust causality standard. In *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, the Fifth Circuit recognized that a "change" in a policy or enforcement of a policy—like the change in zoning through enactment of the IZD—could meet the robust causality requirement if it had a disproportionate adverse effect on a protected group. 920 F.3d 890, 906 (5th Cir. 2019). Unlike the factual scenario in *Lincoln Properties*, where the court ultimately found insufficient allegations of causality, Plaintiff has made allegations that "show or infer that [the City's] policy *diminished* the amount of rental opportunities" for Black and Latino prospective tenants that would be available but for the enactment of the IZD. *Id.* at 907 (quotation omitted) (emphasis in original). Prior to the IZD, multi-family developments that would be disproportionately occupied by Black and Latino households and families with children were "by-right." FAC ¶ 61. After the passage and extension of the IZD, such developments were prohibited. *Id.* ¶¶ 74–75.

Plaintiff's allegations also meet the "artificial, arbitrary, and unnecessary" standard discussed in *Lincoln Property*. *See* 920 F.3d at 904. Plaintiff has described how the IZD is pretextual, arbitrary, and unnecessary to meet its stated purpose. FAC ¶¶ 106–115. Plaintiff does not simply rely on statistics showing a disparity, but instead shows how the IZD causes a disproportionate adverse impact on Black and Latino New Orleanians, as well as families with children. *Id.* ¶¶ 116–123.

Defendants finally argue that accepting Plaintiff's well-pleaded theory of liability would create "absurd results," suggesting that any governmental regulation of rental properties would lead to a viable disparate impact claim. Dfs. Opp. at 9. That is plainly incorrect. The Supreme Court has laid out a set of requirements for pleading disparate impact and Plaintiff has met them

as articulated above. Such allegations could not be made against run-of-the-mill regulation of

rental properties. An absurd result is not simply one that Defendants find "personally

disagreeable" or "objectionable." *See, e.g., Johnson v. Sawyer*, 120 F.3d 1307, 1319 (5th

Cir.1997). Far from absurd, the ordinance challenged here has been recognized by the Supreme

Court to lie in the "heartland" of governmental actions the FHA was designed to prevent.

## CONCLUSION

For the above-stated reasons and the reasons set forth in Plaintiff's opening Motion,

Plaintiff's Motion for Leave to Amend Complaint should be granted.

Dated: July 22, 2024

Respectfully submitted,

/s/ Edward Olds
REED COLFAX*
YIYANG WU*
EDWARD K. OLDS*
DAVID DEPRIEST*
        OF
RELMAN COLFAX PLLC
1225 19th St. NW, Suite 600
Washington, DC 20036
* Appearing pro hac vice

REAGAN R. WILTY (No. 35292)
RANDALL A. SMITH, T.A. (No. 2117)
        OF
SMITH & FAWER L.L.C.
201 St. Charles Ave., Suite 3702
New Orleans, LA 70170
Telephone: (504) 525-2200
Facsimile: (504) 525-2205

*Counsel for Plaintiff, Stanton Square, LLC*