# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STANTON SQUARE, LLC | * | CIVIL ACTION |
| Plaintiff | * | No. 2:23-cv-05733 |
| | * | |
| VERSUS | * | SECTION "O" |
| | * | JUDGE BRANDON LONG |
| THE CITY OF NEW ORLEANS, | * | |
| THE NEW ORLEANS CITY COUNCIL, and | * | |
| FREEDIE KING, III, | * | MAGISTRATE "5" |
| in his official capacity as a member of the | * | JUDGE MICHAEL NORTH |
| New Orleans   City Council | * | |
| Defendants | * | |
| | * | |

**************************************************

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S REVISED SUPPLEMENTAL, AMENDING, AND RESTATED COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF (R. DOC. 44)

The Defendants, the City of New Orleans, the New Orleans City Council, and Freddie King, III, in his official capacity as a member of the New Orleans City Council ("Defendants"), submit the following memorandum in support of their Motion (the "Motion") to Dismiss Plaintiff's Revised Supplemental, Amending, and Restated Complaint for Injunctive, Declaratory, and Monetary Relief (R. Doc. 44) (the "Amended Complaint").[1]

## INTRODUCTION

The issue in this case is whether the Defendants properly exercised municipal zoning power to regulate the development of a rural section of the City of Orleans. Plaintiff submitted plans to Defendants to build 278 multi-family rental units and several amenities in a large area undeveloped tract of forested land in Orleans Parish. The Defendants, after reviewing Plaintiff's plans and conducting public hearings, implemented an Interim Zoning District ("IZD"), which prohibited

---

[1]   Defendants intend the instant motion to supersede their previous Motion to Dismiss, R. Doc. 14.

construction of all multi-family developments, including Plaintiff's development, pending study of the impact of the development upon infrastructure and City services.

Plaintiff's Amended Complaint asserts five causes of action: violation of Section 3604 of the Fair Housing Act ("FHA");[2] violation of Section 3617 of the FHA;[3] violation of the Civil Rights Act of 1964,[4] violation of the Louisiana Equal Housing Opportunity Act;[5] and violation of Due Process under 42 U.S.C. § 1983 and the Louisiana Constitution.[6] Plaintiff's Amended Complaint fails to adequately state a cause of action or ground for relief for any of these claims.

Section 3604 of the FHA prohibits discrimination in housing due to, among other things, race. In the Amended Complaint, Plaintiff claims that Defendants intentionally discriminated against anticipated tenants of Plaintiff's unbuilt development as a result of Defendants' zoning decisions. Plaintiff alleges Defendants acted upon emails and public comments that contained "coded" racial animus. However, the communications quoted in the Amended Complaint are racially neutral. At most, the communications relate to concerns about economics, which are not violative of the FHA. Further, Plaintiff's intentional discrimination theory requires the Court to conclude that Defendants, including Defendant Freddie King, III, himself a black man, found a hidden discriminatory meaning in the communications and then chose to be moved to act on the messages. This scenario is speculative, implausible, and offensive. In addition, there are no facts to support Plaintiff's speculation that the administrative process has been arbitrary or capricious.

Plaintiff's FHA disparate impact claim fails because Plaintiff cannot allege any fact or statistic to show "robust causation" between Defendants' zoning action and a purported racial

---

2   R. Doc. 44, ¶¶ 172-181.
3   *Id.*, ¶¶ 182-188.
4   *Id.*, ¶¶ 189-192.
5   *Id.*, ¶¶ 193-200.
6   *Id.*, ¶¶154-163.

disparity in the rental marketplace in Orleans Parish. The Supreme Court has made it clear:

> [A] disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity.[7]

Simply put, Plaintiff cannot show that the IZD caused any racial disparity that was not already in existence. As the Fifth Circuit in *Inclusive Communities Project, Inc. v. Lincoln Prop. Co*., explained, the element of "robust causation" which is required to be adequately pleaded in an FHA disparate impact claim, "protects defendants from being held liable for racial disparities they did not create."[8] The IZD, by its very nature, maintained the status quo. The rental market, and therefore the racial apportionment of the rental market, was unchanged as a result of the IZD. Therefore, there can be no FHA disparate impact claim under these facts.

Plaintiff mistakenly relies upon a theory of "perpetuation of segregation," which was described in a U.S. Department of Housing and Urban Development regulation.[9]  Under this theory, according to Plaintiff, Defendants could be liable for a violation of the FHA if Defendants' zoning actions failed to improve diversity. However, the Fifth Circuit, in *Inclusive Communities Project, Inc. v. Lincoln Prop. Co*., rejected this idea; the Circuit made it clear that a plaintiff who relied upon a "perpetuation of segregation" theory failed to carry its burden to establish a prima facie case showing "robust causation."[10]

---

[7]   *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc*., 576 U.S. 519, 543 (2015) ("*ICP*") (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 653 (1989), *superseded by statute on other grounds*, 42 U.S.C. § 2000e–2(k)).

[8]   *Inclusive Communities Project v. Lincoln Prop*., 920 F.3d 890, 909 (5th Cir. 2019) (affirming grant of motion to dismiss disparate impact claim for failure to adequately allege causation).

[9]   *See* R. Doc. 21, p. 7 ("Perpetuation of segregation is a distinct theory of liability under the FHA"; citing *Dews v. Town of Sunnyvale*, 109 F. Supp. 2d 526, 564 (N.D. Tex. 2000)); and pp. 13-14 ("A practice has a discriminatory effect where it . . . perpetuates segregated housing patterns because of race, color, religion, sex, handicap, familial status, or national origin"; citing U.S. Dept. of Housing and Urban Dev. Regulation, 24 C.F.R. § 100.500 (2023). HUD's interpretation of the FHA is not entitled to deference. See *Loper Bright Enterprises v. Raimondo*, ___ U.S. ___, 144 S. Ct. 2244, p. 26 (2024) (overruling *Chevron v. Natural Resources Defense Council, Inc*., 467 U.S. 837 (1984), holding that Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority")

[10]  *Lincoln Properties*, 902 ("We read the Supreme Court's opinion in *ICP* to undoubtedly announce a more demanding test than that set forth in the HUD regulation.")

In any event, Plaintiff cannot show that diversity would increase if Plaintiff's development was built. Plaintiff's allegations regarding the demographic makeup of the tenants of its proposed development, or the affordability of its units are speculative. Further, the statistics offered are inapt and fail to show a causal connection necessary to support a claim of disparate impact.

Because these FHA claims and the other federal and state law claims fail to allege plausible causes of action, the Amended Complaint should be dismissed in its entirety.

## PROCEDURAL BACKGROUND

The IZD was implemented on February 2, 2023. On March 6, 2023, Plaintiff filed an action in the Civil District Court of Orleans Parish and asked the court to nullify the IZD and sought other related relief.[11]  On November 17, 2023, the Plaintiff dismissed this action.

Plaintiff filed an original Complaint in this case on October 3, 2023.[12] On November 17, 2023, Defendants filed a Motion to Dismiss for Failure to State a Claim.[13] On July 3, 2024, while the Defendants' Motion to Dismiss was pending, Plaintiff filed a Motion for Leave to Amend Complaint.[14] On July 17, 2024, before the Magistrate Judge had ruled on Plaintiff's first motion for leave to amend its complaint, Plaintiff filed a second motion to amend its complaint.[15]

On July 25, 2024, the Court granted Plaintiff's Second Motion for Leave to Amend Complaint.[16] In doing so, the Court cautioned that "[t]here will be no further curative amendments until the District Judge resolves the pending (or a future revised) motion to dismiss."[17]

On July 30, 2024, Plaintiff's Amended Complaint was filed.

---

[11]   *Stanton Square, LLC v. The City of New Orleans and the New Orleans City Council*, CDC No. 2023-01894.
[12]   R. Doc. 1.
[13]   R. Doc. 14.
[14]   R. Doc. 35.
[15]   R. Doc. 39.
[16]   R. Doc. 43.
[17]   *Id.*

## FACTS ALLEGED IN THE AMENDED COMPLAINT[18]

Plaintiff is a real estate developer.[19] In March 2021, Plaintiff purchased undeveloped forested land in Lower Coast Algiers; Plaintiff proposed to the Defendants that she would develop on the property a multi-family residential complex with 278 units, a swimming pool, clubhouse, playground, gym, pickle ball courts, a dog park, a dog spa, walking trails and storage units (the "Proposed Development").[20] Plaintiff's Proposed Development exceeded 40,000 square feet, and required review and approval by the Design Advisory Committee ("DAC") of the City Planning Commission ("CPC").[21] Plaintiff submitted an initial design review application on May 18, 2022; then there arose opposition from residents in the zoning district concerning infrastructure, drainage, and the environment.[22] Following an August 28, 2022, meeting, the DAC voted to defer its decision and to allow Plaintiff to resubmit its application.[23]

On October 6, 2022, the City Council considered a motion that affected zoning for all properties in the S-RM1 Zoning District in Orleans Parish, which included but was not limited to the Proposed Development.[24] That motion, Motion No. M-22-447 (the "IZD Motion"), directed the CPC to conduct a study and report to amend CZO Art. 19 to establish a new interim zoning district to be named the Lower Algiers Rural Protection Interim Zoning District ("IZD").[25] The intent of the IZD Motion was to temporarily prohibit new development of multi-family residential homes in the S-RM1 Zoning District and commercial development in S-B2 Business District in order to "allow for appropriate impact studies regarding drainage, road and utility infrastructure,

---

[18]   Accepting well-pleaded facts as true, but disregarding conclusory allegations, unwarranted deductions, and legal conclusions. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[19]   R. Doc. 44, ¶ 2, 3.
[20]   R. Doc. 44, ¶¶ 39, 48, 49
[21]   Doc. 44, ¶ 62.
[22]   Doc. 44, ¶¶ 63-67.
[23]   Doc. 44. ¶68-70.
[24]   Doc. 44, ¶ 72.
[25]   *Id.*

municipal services for fire, police, emergency response services, and other public safety considerations, and an environmental impact analysis."[26] The IZD Motion was passed.[27]

On November 15, 2022, Plaintiff appealed the IZD Motion to the Executive Director of the CPC (the "IZD Appeal").[28] At the time of filing the IZD Appeal, Plaintiff had not (and to date, has not) sought or obtained necessary permits for its proposed development.[29] On December 13, 2022, the CPC held a public hearing regarding the IZD Appeal.[30] Following the hearing which included public comments, the CPC recommended to the City Council that Plaintiff's IZD Appeal be granted.[31]

On February 2, 2023, the New Orleans City Council held a public meeting to consider the two zoning ordinances which are the subject of this lawsuit.[32]  On that day, Motion No. M-23-57 (as amended, as corrected), by unanimous vote (6-0), allowed the establishment of a temporary Interim Zoning District, entitled "Lower Algiers Rural Protection Interim Zoning District" (the "IZD Motion"), which called for, among other things, impact studies on drainage, road and utility infrastructure, municipal services for fire, police, emergency response services, and the environment.[33]  Second, Motion No. M-23-62 (as amended), by unanimous vote (6-0), denied Plaintiff's request for a waiver of the requirements of the IZD.[34] At the hearing, residents of Lower Coast Algiers expressed concerns regarding stormwater flooding, strains on municipal services such as police, ambulance and water, increased traffic, potential damage to wildlife, and removal

---

[26]  *Id.*, ¶ 74.
[27]  *Id.*, ¶ 77.
[28]  *Id.*, ¶ 80.
[29]  *Id.*, ¶ 163.
[30]  *Id.*, ¶ 83.
[31]  *Id.*, ¶ 86.
[32]  *Id.*, ¶ 94.
[33]  *Id.*, ¶ 94.
[34]  *Id.*

of trees and fauna.[35]

According to the Amended Complaint, "around the same time the IZD Motion was passed in October 2022, Councilmember King, on behalf of the [English Turn Property Owner's Association], submitted a request to amend the [Future Land Use Map] FLUM designation of all properties zoned for multi-family and suburban commercial on the Peninsula to a single family or semi-rural estate."[36] The FLUM represents the existing future land use designation of property in the City.[37] On July 9, 2024, the City Planning Commission issued a non-binding recommendation to the City Council to change the FLUM designation for the Plaintiff's property to permit single family use.[38]

## I.    LAW AND ARGUMENT

### A.    The Plaintiff Fails to State a Claim upon Which Relief Can be Granted under Rule 12(b)(6).

In deciding a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[39] "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[40] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[41] "It follows, that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'"[42]

---

[35]   *Id.*
[36]   *Id.*, ¶ 143.
[37]   *Id.*, ¶ 42.
[38]   *Id.*, ¶¶ 147, 151, 154, 155..
[39]   *Gonzalez v. Kay*, No. 08-20544, 2009 WL 2357015, p. 2 (5th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[40]   *Id.* (quoting *Iqbal*, 556 U.S. at 664.
[41]   *Id.*
[42]   *Id.*

Under *Iqbal*, a Court first identifies and disregards conclusory allegations for they are "not entitled to the assumption of truth."[43] Then the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief."[44] The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth.[45] The court should not "'strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions."[46] Legal conclusions must be supported by factual allegations.

## B.  PLAINTIFF FAILS TO STATE AN FHA CAUSE OF ACTION

The FHA prohibits housing discrimination, including the refusal to sell or rent housing based on race, color, religion, sex, familial status or national origin, and any policy or conduct that "otherwise make[s] unavailable or den[ies], a dwelling [based on these impermissible factors]."[47] Zoning laws that unfairly exclude minorities may violate the FHA.[48] In the Amended Complaint, Plaintiff alleges that the IZD violated the FHA in two ways: (1) the IZD was enacted "based on discriminatory motives" (*i.e.*, intentional discrimination);[49] and (2) the IZD "impose[d] a disproportionate harm on African Americans and other minorities by depriving them of affordable housing" and "perpetuate[d] and reinforce[d] patterns of segregation in the City of New Orleans and its housing market" (*i.e.,* disparate impact).[50] Neither of these claims is adequately pleaded; both should be dismissed.

---

43   *Iqbal*, 556 U.S. at 679.
44   *Id*.
45   *Iqbal*, 556 U.S. at 679-80.
46   *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir.2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc*., 365 F.3d 353, 362 (5th Cir.2004)).
47   42 U.S.C. § 3604(a).
48   *See Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc*., 576 U.S. 519, 539-41 (2015) ("*ICP*") (discussing application of FHA to zoning cases).
49   R. Doc. 44, ¶ 176.
50   *Id*., ¶¶  177, 178.

1. **Plaintiff's claim of intentional discrimination fails because the facts show that the reasons given for the zoning actions at issue – to pause development in order to assess infrastructure and service needs – were true and there is no plausible racial motive in connection with Defendants' zoning decision**.

A claim of intentional discrimination under the FHA must allege two elements: (1) the stated reasons for the complained of action were false (i.e., pretext), and (2) race was a significant factor.[51] Plaintiff's Amended Complaint fails to adequately allege either element.

First, Plaintiff fails to allege facts that could plausibly support pretext. Plaintiff admits that the property is "undeveloped woodlands."[52] Plaintiff's proposed development will permanently change the nature of the IZD zoning district and will significantly change infrastructure and service needs for the area. Defendants reasonably determined that there existed a need to study the suitability of current zoning because the zoning classification had not been reevaluated "since the 1980's."[53] The facts, therefore, support only one plausible conclusion: Defendants' purpose in enacting the IZD was to maintain the status quo in order to evaluate the impact of development of multi-family units on the undeveloped tract of forested land subject to the IZD. Plaintiff's allegations concerning pretext are not plausible.

Second, Plaintiff fails to plausibly allege racial motivation. Plaintiff cannot allege direct evidence of racial motivation on the part of Defendants because there is none. Rather, Plaintiff relies entirely on purported circumstantial evidence.[54] Although the Supreme Court in *Village of Arlington Heights* contemplated that circumstantial evidence may, in a proper case, demonstrate discriminatory intent, the instant case is not such a case.

---

[51] *Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1555 (5th Cir. 1996).
[52] R. Doc. 44, ¶ 52.
[53] *Id.*, ¶ 41.
[54] Discriminatory intent may be demonstrated by circumstantial evidence in appropriate cases. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp*., 429 U.S. 252 (1977) (pertinent circumstantial factors include: 1. Historical background; 2. Specific sequence of events leading to the decision; 3. Departures from normal procedures; 4. Substantive departures; 5. Legislative history, especially contemporary statements.).

The historical background of the Defendants fails to demonstrate any pattern of racially motivated zoning decisions. Plaintiff alleges in the Amended Complaint that New Orleans is segregated and needs affordable housing.[55] However, Plaintiff does not explain how Defendants may have caused such segregation. Plaintiff states that segregation in the "English Turn area" may be due to "White flight."[56] However, Defendants obviously did not cause "White flight."

In addition, Plaintiff asserts, without factual support, that Defendants have used "discriminatory zoning tactics" in the past.[57] Plaintiff cites a case filed "[i]n recent years" by the United States; however, this case dealt with persons with disabilities, not racial discrimination, so it does not indicate racial discrimination.[58] Further, Plaintiff fails to disclose that the case cited in its Amended Complaint was resolved without any admission of wrongdoing.

The historical background of the property at issue shows that the zoning designation needed to be reevaluated before Plaintiff destroyed the pristine nature of the woodland area. The zoning designation of the property had not been changed for more than forty years. Plaintiff's proposed development would significantly and permanently change the nature of that undeveloped land and surrounding rural areas. *Village of Arlington Heights* recognized that a normal sequence of events is shown where a zoning decision is made concerning the need to preserve the long-standing characteristic of a tract of property.[59]

Plaintiff fails to allege facts to show that Defendants departed from normal procedures in implementing the IZD. Plaintiff alleges that the City Council reached a "gentleman's agreement" between itself and residents of English Turn whereby zoning procedures would be arbitrarily

---

[55]   R. Doc. 44, ¶¶ 22, 118.
[56]   *Id.*, ¶ 24.
[57]   *Id.*, ¶ 33.
[58]   R. Doc. 44, ¶ 33. See *United States v. City of New Orleans*, No. 12-2001, 2012 WL 6085081, *9 (E.D. La. Dec. 6, 2012) (this case was filed in 2012).
[59]   *Village of Arlington Heights*, 429 U.S. at 269 (noting that current zoning had been in effect for 18 years and "the Village is undeniably committed to single-family homes as its dominant residential land use.").

bypassed.[60] However, this allegation is wholly speculative.[61] Importantly, Plaintiff fails to identify any procedural rule violated or bypassed by Defendants in making their zoning decisions. To the contrary, the facts show that that CPC, the recommending body for the City Council, properly considered Plaintiff's proposal. Public hearings were properly held before the CPC and the City Council. The City Council is a legislative branch and is not bound by the CPC's recommendation. The Council's unanimous IZD decision appropriately completed the zoning process.[62] The stated purposes and timing of the IZD are appropriate when considering the need to maintain the status quo while additional information is studied and evaluated. No *Village of Arlington Heights* factor supports Plaintiff's claim. Plaintiff's allegations regarding procedure are not plausible and are based on speculation. Such allegations cannot support a finding of discriminatory motive.

Similarly, no pretext is demonstrated by the CPC's July 9, 2024, FLUM recommendation to the City Council to change the FLUM designation for a tract of land encompassing Plaintiff's land from multi-family to single family.[63] First, the CPC's recommendation to down-FLUM the Plaintiff's property is not binding. CPC's recommendations for all FLUM amendments must first be transmitted to the City Council, in accordance with the Council's Rules and Regulations. Next, the Council will adopt, revise, or deny the amendments, pursuant to Section 5-404(4) of the Home Rule Charter. As of July 24, 2024, the CPC has yet to transmit its recommendations to the City Council and the City Council has yet to receive and adopt any FLUM amendments. Second, even if the FLUM is ultimately changed, the area affected will be much wider than just Plaintiff's

---

[60]   R. Doc. 44, ¶¶ 100, 205.

[61]   Similarly, Plaintiff's contentions that, during public hearings, Plaintiff and other entities put Defendants "on notice of the discriminatory and practical consequences of passing the IZD" (R. Doc. 44, ¶ 95) and that an entity that "regularly monitors City actions" stated that the IZD "is a departure from procedure" (*Id*. at ¶ 101) are wholly conclusory and should be disregarded.

[62]   See *Hallmark Devs., Inc. v. Fulton Cnty*., Ga., 466 F.3d 1276, 1281 (11th Cir. 2006) (city council's rejection of multiple planning boards' recommendation to approve project did not indicate sequence of events that supported a claim of racial motivation).

[63]   R. Doc. 44, ¶¶ 148, 149, 152, 154, 155.

property. Plaintiff's argument that it is being targeted is not plausible. Third, the recommended down-FLUM is related only to land use, not racial make-up. To conclude that the recommendation is racially motivated requires implausible speculation.

Plaintiff's primary theory for intentional discrimination is that Defendants were "influenced by the discriminatory invective coming from residents and organizations like the [English Turn Property Owners' Association]."[64] Plaintiff alleges that residents sent coded "discriminatory emails" to Defendants, Defendants capitulated, and Defendants then manipulated the IZD approval process to stop Plaintiff's development in order to satisfy the residents' racial animus.[65]

There are several holes in this theory. First, the emails and cited public comment do not indicate racial animus.[66] For example, the emails say:

- ""[A]partment complexes fail in New Orleans";

- Apartment complexes have issues with "residents living in less than adequate conditions, having high crime rates, and having concentrated health concerns & quality of life issues";

- "Every apartment complex built in this city failed miserably with people living in deplorable conditions, crime and other health concerns"; and

- the Plaintiff's project "does not mirror the residential density in the area"; and "[t]his development is an afront to our lifestyles."[67]

---

[64]   R. Doc. 44, ¶ 9.

[65]   *Id.*, ¶ 67.

[66]   See *Macone v. Town of Wakefield*, 277 F.3d 1, 7 (1st Cir. 2002) (board member's comment, "I don't think that gives the flavor to what we want," was not coded racial language); *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 743-44 (1st Cir. 1995) ("these young kids, who don't even live in Dedham," and "undesirable element" not coded racial language); *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1292 (7th Cir. 1977) ("The bigoted comments of a few citizens, even those with power, should not invalidate action which in fact has a legitimate basis.")

[67]   *Id.*, ¶ 66. See also ¶67, in which Plaintiff quotes minutes of an August 28, 2022, public hearing where participants expressed concern regarding "additional crime and traffic," "economic disinvestment or flight," and "taking care of families that would reside in the complex."

The language in these emails expresses at most, snobbery or class animus, which is not actionable under the FHA.[68] These emails are nothing like the front-page editorial in the town newspaper in *St. Bernard Parish*, which the Court deemed to be racially motivated.[69]

The facts of the present case are similar to *Hallmark Devs., Inc. v. Fulton Cnty., Ga.*[70] In *Hallmark*, a property developer sought to build low-income housing.[71] At a zoning hearing, some members of the community opposed the project because it was not "upscale," would house "transient" people, and was priced too low.[72] Despite community opposition, planning boards recommended approval, but the city commission disagreed. The Court ruled that the evidence did not show discriminatory intent because it did not show that the board was aware of community members' racist attitudes or that the board's zoning decision was improper.[73] The Court stated that the statements made at the board hearings "demonstrated class, not racial, animus" and "[w]ealth is not a proxy for race."[74]

Finally, Plaintiff fails to allege that any of the purportedly racist emails or public comments actually motivated the Defendants to act with racial animus to prevent Plaintiff's development. To prove disparate treatment under the FHA, the plaintiff must show that the defendant intended to discriminate or was improperly motivated in making the discriminatory decision.[75] Given the

---

[68] See *Hallmark Devs., Inc. v. Fulton Cnty., Ga.*, 466 F.3d 1276, 1273 (11th Cir. 2006) (class animus is not actionable under the FHA). See *Macone v. Town of Wakefield*, 277 F.3d 1, 7 (1st Cir. 2002) (board member's comment, "I don't think that gives the flavor to what we want," was not coded racial language); *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 743-44 (1st Cir. 1995) ("these young kids, who don't even live in Dedham," and "undesirable element" not coded racial language); *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1292 (7th Cir. 1977) ("The bigoted comments of a few citizens, even those with power, should not invalidate action which in fact has a legitimate basis.")

[69] *St. Bernard Parish*, 641 F.Supp.2d at 571 (editorial warning that "high-density housing" would lead to "a ghetto with drugs, crime, vandalism, and violence.").

[70] 466 F.3d 1276, 1283 (11th Cir. 2006).

[71] 466 F.3d at 1281.

[72] *Id.*

[73] *Id* at 1284.

[74] *Id.* at 1285.

[75] See, e.g., *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1386 (5th Cir.1986); *Greater New Orleans Fair Hous. Action Ctr.*, 648 F.Supp.2d at 808.

facially non-racial nature of the emails and public comments cited in the Amended Complaint, it is not plausible that Defendants interpreted such communications as racially motivated. Further, even assuming an argument could be made as to a "coded" meaning in the communications, it is not plausible that Defendants – including defendant Councilperson Freddie King, III, a black man – acted upon a motive for racial animus.

    2.   **Plaintiff's disparate impact claim fails because Defendants' zoning actions did not cause any racial disparity.**

      In *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.* ("*ICP*"),[76] the Supreme Court imposed a "robust causality" requirement for FHA disparate impact claims. Under this rubric, a plaintiff must allege facts or produce statistical evidence at the pleading stage demonstrating a causal connection between the challenged policy and a racial imbalance at the facility.[77] The Court explained, "if [a plaintiff] cannot show a causal connection between the [defendant's] policy and a disparate impact . . . that should result in dismissal of this case."[78] Pursuant to *ICP*, a robust causation requirement means that "[a] plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection [between a challenged policy and a racial imbalance] cannot make out a prima facie case of disparate impact."[79]

      In the instant case, Plaintiff erroneously argues that a less rigorous "perpetuation of segregation" standard, should apply to Plaintiff's disparate impact claim.[80] This standard comes from Department of Housing and Urban Development ("HUD") regulations. However, the Fifth

---

[76]   576 U.S. 519, 524 (2015).
[77]   *Id.*, at 543.
[78]   *Id.*
[79]   *ICP*, 576 U.S. at 543.
[80]   See Amended Complaint, ¶¶ 158-160; R. Doc. 22, Statement of the United States, p. 5 (HUD regulations make clear that all Plaintiff needs to do is show that a practice "actually or predictably results in a disparate impact[.]").

Circuit, in *Inclusive Cmtys. Project v. Lincoln Prop. Co.*,[81] declared that *ICP* "purposefully and significantly" modified HUD regulation to require a showing of robust causation.[82] The Court stated that *ICP* requires a "more demanding" test than the HUD regulation, because the HUD standard has no robust causation requirement.[83] Accordingly, Plaintiff's attempted use of this standard should be rejected.[84]

*Lincoln Property* is instructive. In *Lincoln Property*, a property management company maintained a policy to refuse to rent to, or make units available in "White non-Hispanic areas" to persons participating in a federal voucher program. The Court held that the plaintiff's citation of "statistics establishing that more than 80% of the voucher holders in the Dallas area are black"[85] was not sufficient to demonstrate "robust causality" under *ICP*. The Court explained, "[a] robust causality requirement ensures that racial imbalance does not, without more, establish a prima facie case of disparate impact and thus protects defendants from being held liable for racial disparities they did not create."[86] In addition, the Court noted that governmental policies "are not contrary to the disparate impact requirement, unless they are 'artificial, arbitrary and unnecessary barriers.'"[87] As a result, the Court affirmed the dismissal of the plaintiff's complaint.

The Court discussed four potential approaches to "robust causation" as used by Federal Circuits. First, the Eighth Circuit in *Ellis v. City of Minneapolis* held that in order to demonstrate "robust causation," a plaintiff's allegations must "point to an artificial, arbitrary, and unnecessary policy causing the problematic disparity[.]"[88] The Court in *Lincoln Property*, applying *Ellis*,

---

[81]   920 F.3d at 902.
[82]   *Id*. (punctuation omitted).
[83]   *Id*.
[84]   On a motion to dismiss a plaintiff is not entitled to any advantage in resolving questions of law such as the proper legal standard. See e.g., *Beavers v. Metro. Life Ins. Co*., 566 F.3d 436, 439 (5th Cir. 2009).
[85]   *Id*. at 897, 898.
[86]   *Id*. at 902 (punctuation omitted, quoting *ICP*, 576 U.S. at 542).
[87]   *Id*. at 903.
[88]   *Id*. 920 F.3d at 904 (punctuation omitted, citing *Ellis v. City of Minneapolis*, 860 F.3d 1106, 1114 (8th Cir. 2017).

reasoned that the private landlords' decisions not to participate in the government Section 8 program could not be deemed to be artificial, arbitrary, or unnecessary to health and safety.[89] Second, under the Fourth Circuit's majority opinion in *Reyes v. Waples Mobile Home Park Limited Partnership*,[90] "statistical disparities must be sufficiently substantial that they raise the necessary inference of causation[.]"[91] The Court in *Lincoln Property* interpreted this to mean that robust causation could be found as a result of a change of policy that increased the number of minorities being adversely affected, which the Court found not to exist with respect to the "no voucher" policy in its case. Third, under the dissent in *Reyes*, disparate impact must be caused by the complained of action in order to give rise to liability. "[G]eographical happenstance cannot give rise to liability against an entity not responsible for the geographical distribution."[92] The Court in *Lincoln Property* concluded that no robust causation was alleged in its "no voucher" case because no allegation supported an inference that the "no vouchers" policy caused any racial disparity in voucher holders in the relevant geographic area. Fourth, the Eleventh Circuit in *Oviedo Town Ctr., II, L.L.P. v. City of Oviedo, Florida*,[93] "robust causation" was a means of "cabining" disparate impact liability.[94] Under this approach, the robust causality requirement ensures that "racial imbalance does not, without more, establish a prima facie disparate impact."[95] The Court in *Lincoln Property* found that robust causation was not sufficiently alleged under this view, either.

In the present case, Plaintiff cannot demonstrate robust causation under any of the articulations considered by *Lincoln Property*. Under *Ellis*, Defendants' actions were not artificial, arbitrary, or unnecessary. Defendants' zoning action merely temporarily paused development of

---

[89] *Id.*
[90] 903 F.3d 415.
[91] *Lincoln Property*, 920 F.3d at 904 (quoting *Reyes*, 903 F.3d at 425).
[92] *Id.,* at 905 (quoting *Reyes*, 903 F.3d at 434-45 (Keenan, J., dissenting) (emphasis in original).
[93] 759 Fed.Appx. 828, 833-35, No. 17-14254, 2018 WL 6822693, *4 (Dec. 28, 2018).
[94] *Lincoln Property*, 920 F.3d at 905 (quoting *Oviedo*, 759 Fed.Appx. at 833-834).
[95] *Id.* (quoting *Oviedo*, at 834) (punctuation omitted).

certain construction to evaluate the impact of development on the infrastructure. The focus on multi-family dwellings is attributable to the scale of impact multi-family developments would likely have on the affected rural area. Under the *Reyes* majority approach, in the present case, as in *Lincoln Property*, the Plaintiff's allegations do not "show or infer that [Defendants'] policy diminished the number of rental opportunities for Arican American or Black prospective tenants previously available before [Defendants'] policy was implemented."[96] Under the *Reyes* dissent view, Plaintiff fails to allege that Defendants caused any racial disparity in the population of renters or persons in poverty. Finally, under *Oviedo*, Plaintiff can demonstrate only racial imbalance in a rental market, which is insufficient. *Oviedo* recognized that "if a disparate impact claim could be found on nothing more than a showing that a policy impacted more members of a protected class than nonmembers of protected classes, disparate impact liability undeniably would over burden cities and developers."[97] Here, under Plaintiff's theory, if it is successful, the Defendants would be unable to create any policy or zoning ordinance affecting *any* rental properties without subjecting themselves to a lawsuit based on the FHA.

Plaintiff, in the Amended Complaint, attempts to show "robust causation" by reference to statistics concerning the racial makeup of Orleans Parish, the likelihood of non-White people to rent, and segregation in Orleans Parish.[98] However, Plaintiff's "estimate" of the racial makeup of the proposed development based on these statistics is wholly speculative because no basis is given to conclude that the development's racial makeup will be the same as the demographics of renters within 20 miles of the proposed development.[99] For this reason, alone, Plaintiff fails to adequately allege robust causation.

---

[96]   *Id*. at 907.
[97]   759 Fed. Appx. at 834.
[98]   R. Doc. 44, ¶¶ 21, 22, 23 (segregation); 118 (Orleans Parish); 119 (renters).
[99]   *Id*., ¶ 121.

More importantly, Plaintiff's attempt to show "robust causation" fails because it cannot demonstrate that any action of Defendants caused any of the racial imbalance cited by Plaintiff. As the Fifth Circuit stated in *Lincoln Property*, "[a] robust causality requirement ensures that racial imbalance does not, without more, establish a prima facie case of disparate impact and thus protects defendants from being held liable for racial disparities they did not create."[100] It cannot be argued that the IZD at issue in this case created any racial disparities or housing shortages for minorities because the IZD did not change anything; the IZD kept the status quo. Defendants did not cause any disparity described by Plaintiff's statistics. Rather, the disparities cited by Plaintiff are wholly dependent on geography, which cannot form the basis of a disparate impact claim. Plaintiff's statistics, at most demonstrate "geographical happenstance," but this "cannot give rise to liability against an entity not responsible for the geographical distribution."[101] For this reason, Plaintiff's allegations fail to articulate a claim of FHA disparate impact.[102]

If Plaintiff's theory of liability were accepted, absurd results would follow. Governmental entities would be subject to FHA liability merely by regulating rental properties, since, according to Plaintiff's view, such regulation would disparately impact racial minorities. This would conflict with the Fifth Circuit's recognition "as to the limited nature of the disparate impact claim that exists under the FHA" post-*ICP* and the need to causally link the challenged policy to any imbalance.[103] The Supreme Court has emphatically stated that "[t]hese limitations are also necessary to protect defendants against abusive disparate-impact claims."[104]

C. **Plaintiff's Second Cause of Action - Fair Housing Act, 42 U.S.C. § 3617 – fails because there is no violation of Section 3604 of the FHA and, further,**

---

[100] *Id.* at 902 (punctuation omitted, quoting *ICP*, 576 U.S. at 542).
[101] 920 F.3d at 906 (quoting *Reyes v. Waples Mobile Home Park Limited Partnership*, 903 F.3d 415, 434 (4th Cir. 2018).
[102] R. Doc. 44, ¶¶ 123.
[103] *Lincoln Prop.*, 920 F.3d at 903.
[104] *ICP*, 576 U.S. at 522.

**because there are no facts to show any interference or retaliation.**

Section 3617 of the FHA makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section . . . 3604" of the FHA.[105] Plaintiff relies on the same allegations in this count as in the First Cause of Action.[106] Where a plaintiff alleges that the same conduct underlies claims of violations of Section 3604 and Section 3617, the validity of the Section 3617 claim depends on the whether the defendant's conduct also violated 3604.[107] Plaintiff has failed to allege sufficient facts to support a violation of the FHA under Section 3604. Plaintiff similarly fails to allege sufficient facts to support a violation under 3617. In addition, Plaintiff fails to support its claim of "interference" or "retaliation" with facts.[108] Plaintiff's conclusory claims do not suffice to adequately allege a violation of Section 3617 of the FHA.

**D.   Plaintiff's Third Cause of Action – Title VI of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d,** *et seq.* **– fails because Defendants did not intentionally discriminate against Plaintiff in implementing a temporary IZD.**

Pursuant to 42 U.S.C.A. § 2000d, "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[109] This claim fails for the reasons set forth above. Plaintiff fails to plausibly allege that any of Defendant's actions were undertaken "on the ground of race, color, or national origin," or caused harm to any person of protected status by removing housing options available to such

---

[105]   42 U.S.C. 3617.
[106]   R. Doc. 44, ¶¶ 172-181, 182-183.
[107]   *See Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 558 F.2d 1283, (7th Cir. 1977) certiorari denied 98 S.Ct. 752, 434 U.S. 1025, 54 L.Ed.2d 772, on remand 469 F.Supp. 836 (Section 3617 claim based on zoning decision depended on whether there was an underlying violation of the FHA under Section 1304).
[108]   Doc. 1, ¶ 133.
[109]   42 U.S.C.A. § 2000d. *See also* 24 C.F.R. § 1.1.

persons. This claim is not plausibly pleaded and should be dismissed.

### E.   Plaintiff's Fourth Cause of Action – Louisiana Equal Housing Opportunity Act La. R.S. § 51:2601, et seq. – is without merit.

The Louisiana Equal Housing Opportunity Act is substantially equivalent to the FHA and makes it unlawful to racially discriminate against any person in the provision of services or facilities in connection with the sale or rental of a dwelling.[110] This claim should be dismissed for the same reasons as are set forth above in the sections relating to Plaintiff's FHA claims (which are incorporated into this section). In addition, Defendants note that in Louisiana, a "presumption of validity attaches to all zoning decisions ...."[111] The purpose of the IZD Motion was to allow the proper infrastructure studies before permitting a development in the entire area of Lower Coast of Algiers. This is inarguably a legitimate public welfare interest.  Plaintiff was no more impacted or harmed by this temporary pause than any other similarly situated potential multi-family development in the Lower Coast of Algiers. Plaintiff's Proposed Development remains in its initial design stage.  The Plaintiff has not applied for any permits.  While Plaintiff's assertion is that the development is by right, it is subject to state law and local ordinances, not the Constitution, with regards to zoning.[112] Because Plaintiff is not vested with any rights to pursue its development, the demographic makeup of the development must be speculative. Therefore, any claim that racial minorities might be adversely affected by Defendant's zoning actions is too speculative to base a claim upon.

### F.   Plaintiff's Fifth Cause of Action – Due Process Rights under 42 U.S.C. § 1983 and the Louisiana Constitution – are without merit.

The U.S. Court of Appeals, Fifth Circuit, established in *Da Vinci*,[113] "[t]o prevail on a

---

[110]   42 U.S.C. § 3601, et seq.; La. R.S. 51:2601, et seq., especially § 51:2606.
[111]   *Palermo Land Co. v. Plan. Comm'n of Calcasieu Par.*, 561 So.2d at 490.
[112]   *Sullivan Properties, Inc. v. City of Winter Springs*, 899 F. Supp. 587, 595 (M.D. Fla. 1995).
[113]   *Da Vinci Inv., Ltd. P'ship v. Parker*, 622 F. App'x 367 (5th Cir. 2015).

substantive due process claim, [a plaintiff] must first establish that it held a constitutionally protected property right to which the Fourteenth Amendment's due process protection applies."[114] "To have a property interest in a benefit," a plaintiff must "have a legitimate claim of entitlement to it"; relevant entitlements are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."[115] If the benefit may be granted or denied at the discretion of government officials, it is not an entitlement.[116]

Plaintiff has failed to prove it has a legitimate claim of entitlement or possesses a liberty interest to pursue its development because the city council has the discretion to grant or deny a development plan application.[117] In any event, Plaintiff's proposed development has not been denied but rather delayed. The instant matter is distinguishable from *Nasierowski*.  In *Nasierowski*, a landowner brought civil rights action against a city because the city failed to afford the landowner notice and opportunity to be heard prior to the city's vote adopting zoning amendment which reclassified property.  In this instance, the Plaintiff received notice and had an opportunity to be heard before the council took any action to enact regulations that would impact the entire zoning district, not just Plaintiff's property.

### G.  If the Court dismisses only the Federal claims, the Court should decline supplemental jurisdiction over Plaintiff's state law claims.

In the instant case, if the Court dismisses Plaintiff's federal law claims in her Amended Complaint but maintains the state law claims, Plaintiff will have stated no viable federal claim against the Defendants. With no federal question remaining, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismiss Plaintiff's state

---

[114] *Simi Inv. Co., v. Harris Cnty.*, 236 F.3d 240, 249–50 (5th Cir.2000).
[115] *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005) (citation and quotation marks omitted).
[116] *Id*.
[117] *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991).

law claims.[118]

## **CONCLUSION**

For the foregoing reasons, Plaintiff has failed to present facts to support any of its causes of action. Plaintiff's Amended Complaint should be dismissed.

Respectfully submitted,

\_\_/s/\_ *James Roquemore*_____
**JAMES ROQUEMORE, LSBA #40335**
ASSISTANT CITY ATTORNEY
**SHAWN LINDSAY, LSBA #28466**
DEPUTY CITY ATTORNEY
**CORWIN ST. RAYMOND, LSBA #31330**
CHIEF DEPUTY CITY ATTORNEY
**DONESIA D. TURNER, LSBA #23338**
CITY ATTORNEY
1300 PERDIDO STREET
CITY HALL - ROOM 5E03
NEW ORLEANS, LOUISIANA 70112
TELEPHONE:  (504) 658-9800
FACSIMILE:   (504) 658-9868
E-MAIL: james.roquemore@nola.gov

*Counsel for the City of New Orleans, New Orleans City Council, and Freddie King, III, in his official capacity as a member of the New Orleans City Council*

---

[118]   28 U.S.C. § 1367(a).