UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**STANTON SQUARE, L.L.C.**                                **CIVIL ACTION**

**VERSUS**                                                **NUMBER: 23-5733**

**CITY OF NEW ORLEANS, ET AL.**                           **SECTION: "O" (5)**

**ORDER**

Before the Court is Plaintiff's Motion for Leave to File Second Amended Complaint. (Rec. doc. 69). Defendants the City of New Orleans, the New Orleans City Council, and Councilmember Freddie King III (collectively, "Defendants") oppose the motion. (Rec. doc. 72). Plaintiffs responded to Defendants' opposition. (Rec. doc. 75). Having reviewed the pleadings and the case law, the Court rules as follows.

**I.    Background**

This lawsuit arises from a controversy surrounding The Village at English Turn ("The Village" or "the Development"), a stalled multi-family housing development in Lower Coast Algiers located near the wealthy, gated community of English Turn. (Rec. doc. 1). In March 2021, Plaintiff Stanton Square, L.L.C. ("Stanton Square") purchased an undeveloped tract of land to construct the housing complex. (*Id.* at ¶ 20). Since the 1980s, this property had been zoned as Suburban Multi-Family Residential ("S-RM1"), which permits the development of lower density multi-family housing. (*Id.*). The adoption of the City's Master Plan in 2010 also gave the property a Residential-Family Post-War ("RMF-POST") designation, underscoring the multi-family development goals for the property. (*Id.* at ¶ 21). Plans for The Village include 278 rental units, consisting of 104 one-bedroom units, 126 two-bedroom units, and 48 three-bedroom units, with a significant portion of the units priced to be affordable housing based on the metrics of the U.S. Department of Housing and

Urban Development. (*Id.* at ¶ 24). Originally, The Village projected opening in December 2023, with full availability by the end of 2024. (*Id.* at ¶ 30).

In May 2022, Stanton Square submitted its project proposal to the Design Advisory Committee ("DAC") of the City Planning Commission ("CPC"). (*Id.* at ¶ 42). Not long after, word of the proposed Development spread publically and strong opposition to the Development quickly grew. (*Id.* at ¶ 43). Many of the Development's strongest opponents reside in nearby English Turn, a community comprised of 450 homes with a country club, golf course, and other country-club amenities. (*Id.* at ¶ 32, 43). English Turn residents and its Property Owners' Association ("ETPOA") campaigned strongly against the Development. (*Id.*). Stanton Square alleges that this opposition stemmed from the character of The Village's potential residents. The area surrounding English Turn is 20-40% African American (*id.* at ¶ 2), while African Americans make up about 57% of the population of New Orleans, also comprising 60% of the City's renters and 48% of the City's homeowners. (*Id.* at ¶ 92). Further, African Americans and Hispanics make up more than 83% of those living below the poverty level in New Orleans, which is facing an affordable housing shortage. (*Id.* at ¶ 109). Accordingly, Stanton Square claims may of its units would likely be occupied by minorities. Stanton Square argues that discrimination, not land use concerns, fueled the campaign against The Village. This campaign consisted of a myriad of lobbying efforts, including the formation of a Development Opposition Committee, the creation of a group called "Lower Coast Algiers," which formed a website to track efforts to halt The Village's progress, and discriminatory emails sent by English Turn residents regarding a likely increase in crime and decrease in their property values. (*Id.* at ¶¶ 43-46).

This opposition reached a critical point at the August 28, 2022 DAC meeting to discuss the Development's proposed design. (*Id.* at ¶¶ 43-47). Approximately 80 English Turn residents attended the meeting to voice their concerns about the Development. (*Id.* at ¶ 47). According to the meeting minutes, some of the residents' concerns included increased crime in the area. (*Id.*). Seemingly in response, the DAC deferred its decision on the plans until November 2022. (*Id.* at ¶¶ 48-49). Before the second DAC meeting took place, "District C" Councilmember and English Turn resident Freddie King, III introduced a motion for the establishment of the Lower Algiers Rural Protection Interim District ("the IZD Motion") on October 6, 2022. (*Id,* at ¶ 51). This IZD would temporarily prohibit the development of multi-family residential homes so impact studies on drainage, road, and utility infrastructure, municipal services for fire, police, emergency response services, and other public safety considerations, and an environmental impact analysis could be conducted. (*Id.* at ¶ 53). The IZD also prohibited any City agency from accepting permit applications or issuing any permits that would conflict with the proposed IZD. (*Id.* at ¶ 54). However, because King owned property in the affected area, he removed his name from the motion and recused himself from the initial vote. (*Id.* at ¶ 55). The City Council voted to pass the IZD motion, and Stanton Square appealed the IZD determination a month later. (*Id.* at ¶¶ 56, 59). On December 13, 2022, the CPC held a public hearing at which CPC members noted that the Development was in full compliance with the Master Plan and found that the IZD would limit the development of needed housing in New Orleans. (*Id.* at ¶¶ 64-65). The subsequent report on the appeal unanimously recommended the denial of the IZD determination, finding that the Development met the requisite review standards the City Council had established in the IZD motion. (*Id.* at ¶ 67).

Despite this recommendation to deny the IZD motion, King circulated an amended version of the motion, which included more ambiguous appeal criteria, at the City Council meeting held on February 3, 2023. (*Id.* at ¶ 72). At the meeting, the ETPOA argued for the IZD, claiming that the area needed to remain as single-family homes and discussed the need for the impact studies. (*Id.* at ¶ 73). During the meeting, no City official pushed back against or disagreed with the residents' opposition, nor did any City official mention any issues with federal housing laws. (*Id.* at ¶ 75). King then moved for a vote, and six councilmembers, including King, voted in favor of two motions, one enacting the IZD and one denying Stanton Square's appeal of it. (*Id.* at ¶ 76). The only written justification given for the IZD was that it was "deemed necessary and in the best interest of the City of New Orleans." (*Id.* at ¶ 78). Stanton Square equates this vote to a "gentleman's agreement": This vote concerned King's district, and King voted in favor of the IZD, followed by the remaining Councilmembers. (*Id.* at ¶ 158). The IZD Ordinance became law on March 19, 2023. (*Id.* at ¶ 81). While the IZD is not perpetual, it appears King is attempting to create a more permanent solution. Around the same time he introduced the IZD motion in 2022, King also submitted an application to re-zone all RSM1-designated properties in Lower Coast Algiers to a Suburban Single-Family or Rural Residential Estate designation. (*Id.* at ¶ 98).

Stanton Square filed this action against the City of New Orleans, the New Orleans City Council, and Freddie King, III, in his official capacity as a member of the New Orleans City Council, alleging violations under federal and Louisiana state law. (*Id.*, *passim*). Stanton Square also seeks injunctive relief and requests an issuance of a writ of mandamus

to dissolve the IZD, or alternatively, to grant Stanton Square's IZD appeal. (*Id.* at ¶¶ 164-70).

On November 17, 2023, Defendants moved to dismiss Stanton Square's Complaint. (Rec. doc. 14). On July 3 and July 17, 2024, Stanton Square moved to file its First Amended Complaint. (Rec. docs. 35, 39). The undersigned dismissed the first motion as moot but granted the second motion, allowing Stanton Square leave to file its First Amended Complaint, (rec. doc. 41), thereby mooting Defendant's motion to dismiss. On August 12, 2024, Defendants again moved to dismiss Stanton Square's First Amended Complaint. (Rec. doc. 45). That motion is pending.

Stanton Square now seeks leave to file its Second Amended Complaint because the factual circumstances have changed since the filing of its First Amended Complaint. Specifically, Stanton Square alleges that Defendants took additional steps to permanently block the development of planned muti-family housing by Stanton Square as well as any multi-family housing on Stanton Square's property and adjacent developments. On July 25, 2024, King presented a motion to permanently downzone Stanton Square's property, along with neighboring properties owned by Stanton Village, L.L.C. and Phelps Street Holdings, L.L.C. (collectively, "Plaintiffs") to the City Council. (Rec. doc. 69-2 at ¶ 168). All three entities are owned and/or managed by Dr. Xinhong Zhang. (*Id.* at ¶¶ 22, 27). The City Council passed the motion against a backdrop of procedural irregularities (*id.* at ¶¶ 169-71), including an impact study that had not been completed and changes to the City's Future Land Use Map ("FLUM") that had not been executed. Both procedural irregularities were noted by the CPC. (*Id.* at ¶ 173).

On December 5, 2024, against the recommendation of the CPC, King introduced an ordinance proposing that the FLUM designations of the properties owned by Stanton Square and Stanton Village be changed from residential multi-family post-war to residential single-family post-war and the designation of the property owned by Phelps Street Holdings be changed from suburban multi-family residential to residential single-family semi-rural. (*Id.* at ¶ 204). The ordinance amending the FLUM passed on December 30, 2024. (*Id.* at ¶ 211). Then, on January 9, 2025, King introduced an ordinance codifying the downzoning of the properties owned by Stanton Square and Stanton Village to Residential Single-Family Post-War, and the property owned by Phelps Street Holdings to Residential Single-Family Rural. (*Id.* at ¶ 212). The Council passed that ordinance on January 30, 2025. The permanent downzoning went into effect on February 9, 2025. (*Id.* at ¶ 213). Plaintiffs thus now seek to again amend their Complaint to address these developments.

## II. Law and Analysis

Because the deadline to amend pleadings has passed, Stanton Square must meet the requirements of Rule 16 to merit leave to amend its complaint. Under Rule 16(b), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). This generally requires the movant to "show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Filgueira v. U.S. Bank Nat. Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013) (citation omitted). The four factors relevant to determining the existence of good cause in the context of post-deadline amendment are: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and

(4) the availability of a continuance to cure such prejudice." *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (quoting *S & W Enters., L.L.C. v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)). Only after the "good cause" requirement under Rule 16(b) are satisfied is the analysis under Rule 15(a)(2) triggered. *S&W Enters.*, 315 F.3d at 535-36.

Under Rule 15(a), a party may amend its pleading with the opposing party's written consent or leave of court, which leave should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2). The Rule 15(a) inquiry requires the court to balance the difficult task of assuring a party a fair opportunity to present his claims and defenses while at the same time protecting the district court from being imposed upon by the presentation of theories seriatim. *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981) (citation omitted). Although leave to amend is not automatic, *Avatar Expl., Inc. v. Chevron USA, Inc.*, 933 F.2d 314, 320 (5th Cir. 1991) (citation omitted), given Rule 15(a)(2)'s bias in favor of granting leave to amend, a court "must possess a 'substantial reason' to deny a request." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citation omitted); *accord Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) (citing *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999); *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000)). The five relevant factors considered in determining whether leave to amend is proper or there is substantial reason to deny the request are: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment. *Gregory*, 634 F.2d at 203 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (citation omitted);

7

*see also Strickland v. Bank of New York Mellon*, 838 F. App'x 815, 821 (5th Cir. 2020) ("Denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile.") (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)). Consideration of the futility factor requires the court to assess whether the amended complaint would survive a Rule 12(b) motion. *Marucci Sports*, 751 F.3d at 378 (citing *Stripling*, 234 F.3d at 873). The court must accept all well-pleaded facts as true and consider the complaint in the light most favorable to the plaintiff, but the Court should not accept as true "'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (same); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (1955) (The "obligation to provide the grounds of [ ] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citations and internal quotation marks omitted).

Having considered the foregoing factors under Rules 16 and 15, the Court finds good cause in part to allow the amendment as to Stanton Square's new claim for inverse condemnation allegedly resulting from the February 9, 2025 permanent effective date of the downsizing ordinance. Had Stanton Square attempted to assert any inverse condemnation claim earlier under the "temporary" status of the IZD, Defendants would no doubt have levied an argument of prematurity against any takings claim. Stanton Square's explanation for the failure to timely move to assert the takings claim earlier thus satisfies Rule 16's requirement. Moreover, the assertion of the claim is important given that regulatory takings claims are viable under both federal and Louisiana law. Neither is there

prejudice to Defendants, nor will a continuance be necessary or warranted. Seven months remain to conduct discovery in this lawsuit, and trial is not scheduled until next year.

For the same reasons, none of the Rule 15 factors weighs in favor of denying the amendment as to the takings claim. Most significantly, the Court cannot find – despite Defendants' argument – that the claim is futile. Contrary to Defendants' argument that a taking must deprive an owner of *all* of the use of his property, that is not the law under the Louisiana or the Federal Constitutions as interpreted by the Louisiana courts. Indeed, "regulatory programs that affect property values may or may not constitute takings. We hold that a regulatory program that adversely affects property values does not constitute a taking unless it destroys *a major portion* of the property's value. *Robert v. State*, 327 So. 3d 546, 560 (La. Ct. App. 2021) (emphasis added) (citing *Annison v. Hoover*, 517 So.2d 420, 423 (La. App. 1st Cir. 1987)). What constitutes a "major" portion of Stanton Square's property is not an appropriate issue for resolution on a motion for leave to amend. Whether a taking occurred here is simply not as cut and dried as Defendants suggest, and a merits ruling is unwarranted on a motion for leave to amend with inadequate and scanty briefing.

With regard to the addition of two new parties – Stanton Village, L.L.C. and Preston Street Holdings, L.L.C. – the Court finds that Stanton Square has not demonstrated good cause to amend its Complaint to add these new plaintiffs. Stanton Square provides no good reason why these two entities could not have joined the original lawsuit when Stanton Square filed it. They are owned and/or managed by the same individual who certainly knew (or should have known) – as he did as Stanton Square's manager/owner – that these zoning issues were coming to a head before the New Orleans Council and would affect their

9

tracts of land to some extent. It is far too dilatory to add them at this stage of the litigation. This case has been pending since October 3, 2023 and is set for trial at the beginning of next year. To add two new parties with individual tracts of land and individual theories of recovery this late in the game is unwarranted. Stanton Square argues that the only difference between it and the two new entities is that they did not have applications for use pending at the time of the rezoning. That only begs the question of whether these two entities even have standing to sue Defendants, given there is no indication that they have even suffered any injury at the hand of Defendants. To add them at this late stage would only unduly delay this lawsuit. And even though Stanton Holdings and Preston Street threaten to file their own lawsuit, there is little risk of consolidation with this suit in this Court. The parties, the tracts of land, and the theories of recovery are wholly different. Indeed, neither proposed plaintiff even asserts that they had intended to develop the same type of housing on their tracts of land, thereby rendering it questionable whether the same statutes would even apply to their claims.

### III. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion for Leave to Second Amended Complaint (rec. doc. 69) is **GRANTED IN PART** and **DENIED IN PART** as outlined above.

New Orleans, Louisiana, this 19th day of May, 2025.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE